# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOS
# EASTERN DIVISION

| | | |
|---|---|---|
| GISELLE HIGUERA Administrator for the Estate of Anthony Alvarez and as mother of A.A., a minor, | ) ) ) ) | No. |
| Plaintiff, | ) ) | Honorable Judge |
| v. | ) ) ) | Honorable Magistrate |
| City of Chicago and City of Chicago Police Officers Evan Solano, Star No. 12874 and Sammy Encarnacion, Star No. 11790, | ) ) ) ) | |
| Defendants. | ) | JURY DEMANDED |

## COMPLAINT

NOW COMES the Plaintiff, GISELLE HIGUERA, as administrator of the Estate of Anthony Alvarez, deceased and as mother of A.A. a minor (hereinafter referred to as "Plaintiff"), by and through her attorneys, and for her Complaint against the Defendants, City of Chicago and City of Chicago Police Officers Evan Solano, Star No. 12874 and Encarnacion, Star No. 11790.

### INTRODUCTION

1. This action, arising out of the shooting death of Anthony Alvarez ("Plaintiff") caused by the Defendant Officers, is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Decedent's rights as secured by the United States Constitution.

2. On March 31, 2021, at the age of 22 years old, Anthony Alvarez was killed when he was shot in the back and his left leg without lawful justification by Defendant Chicago Police Officer Evan Solano, who was acting under color of law as a police officer for Defendant City of Chicago.

3. This Court has jurisdiction of the action pursuant to 28 U.S.C. Section 1331 and U.S.C. Section 1367, and venue is proper under 28 U.S.C. Section 1391(b). On information and belief, all parties reside in the judicial district, and the events giving rise to the claims occurred within the district.

**PARTIES**

4. Anthony Alvarez, until the time of his death, was a resident of Chicago, Cook County, Illinois.

5. Giselle Higuera is the mother of Anthony Alvarez's minor child A.A. and has been appointed Administrator of his Estate. This action is brought on behalf of Anthony's Estate and on behalf of A.A., a minor, for Anthony's Death, caused by the Defendant Officers and the City of Chicago.

6. Defendants Solano and Encarnacion, herein referred to as "Defendants" and/or "Defendant Officers", at all times relevant to this complaint, were Chicago Police Officers employed by the City of Chicago Police Department, and agents of the City of Chicago, on duty, acting within the scope of their employment and under color of state law. The Defendant Officers are sued in their individual capacity.

7. The City of Chicago is a municipal corporation organized under the laws of the State of Illinois and, at all relevant times, was the employer of the defendant officer.

**Background**

8. On the evening of March 31, 2021, Anthony Alvarez was walking when Defendants rapidly drove their police car right at him.

9. When the officers executed this aggressive and unwarranted tactic, Anthony was holding two plastic grocery bags in his hands.

2

10. The Defendant Officers did not witness Anthony breaking any law.

11. Anthony was not wanted for any violent offense or any felony offense.

12. Startled, and fearful of the officers' intentions, Anthony ran.

13. On information and belief, Defendant Officers did not radio for assistance before jumping out of their car and initiating their deadly foot chase.

14. Approaching Anthony as Defendants did—by driving their car at him and initiating a dangerous foot chase without adequate cause—constituted excessive force.

15. As he ran, Defendant Officer Solano dropped his eyeglasses and hat in an alley.

16. Anthony lost his footing as he ran out of the mouth of the alley onto the lawn of a home located on the 5200 block of West Eddy Street, Chicago, Illinois.

17. Defendant Officer Solano left his partner in the alley and turned onto Eddy Street where he saw Anthony.

18. Defendant Officer Solano immediately fired several shots at Anthony striking him in the back and leg.

19. Anthony did not threaten Defendant Officers or anyone else.

20. With his last words, Anthony asked Defendant Solano, "Why did you shoot me?"

21. Anthony died from his wounds.

22. The Defendant Officers used inappropriate, unwarranted, and unjustifiable force against Anthony.

23. As a result of Defendant Officers' unlawful use of force, Anthony suffered pain, before the gunshot wounds eventually killed him.

24. Even after violating Anthony's rights by driving his police vehicle right at him, initiating a reckless foot pursuit, and shooting and killing him; Defendant Solanos felt free to act with impunity with regard to the safety of Chicago citizens.

25. On May 21, 2021, not two months after killing Anthony, Defendant Solano was involved in a road rage incident captured on video by bystanders.

26. With his gun drawn, and in police uniform, Defendant Solanos screamed obscenities at another driver, while bystanders urged him to holster his weapon.

27. As explained in the *Monell* count below, the City of Chicago is directly responsible for the civil rights violations which caused Anthony Alvarez's death.

28. The City's failure to implement a foot chase policy and its support of a policing culture of impunity were the driving force behind the Defendant Officers' unconstitutional actions.

**Count I
42 U.S.C. Section 1983
Fourth Amendment – *Monell* Against City of Chicago**

**A.   Chicago's Problematic History of Deadly Foot Chases and Related Excessive Force**

29. The Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

30. On December 7, 2015, the U.S. Attorney General launched a civil rights investigation into the Chicago Police Department's policing tactics[1]. The investigation examined (among other things):

> a. whether CPD is engaging in a pattern or practice of unlawful conduct, and if so, what systemic deficiencies or practices within CPD, IPRA, and the City might be facilitating or causing this pattern of practice. (*Id.* at 1);

---

[1] Department of Justice, Civil Rights Division and United States Attorney's Office Northern District of Illinois, Investigation of Chicago Police Department, at 4 (January 13, 2017).

    b. to examine CPD's use of force and address CPD policies, training, reporting investigations, and review related to officer use of force. (*Id.*); and

    c. to determine CPD's handling of incidents involving those in crisis, whether related to addiction, trauma, or mental health. (*Id.*)

31. On August 26, 2016, the Chicago Tribune published an article tracking 435 police involved shootings over a recent six-year span[2]. The article focused, in part, on the police involved shooting death of 92 people and wounding 170 others. The authors of the article reviewed Chicago Police Department records from a database of details of every time police fired a weapon from 2010 through 2015. A portion of the data revealed why officers were initially at the scene in 185 shootings. The data revealed the following:

    a. at least 40 shootings began with a traffic or street stop, either because of an alleged violation or after officers stopped and questioned a group congregating in public. (*Id.*)

    b. in more than a third of the stops, officers gave chase on foot, pursing suspects through residential backyards, alleys or over fences before opening fire. (*Id.*)

    c. of 74 autopsy reports reviewed by the Tribune, at least 11 showed the shooting victims had been struck only in their back, buttocks or back of the head. (*Id.*)

32. The Chicago Tribune published a follow-up article addressing police shootings during foot chases.[3] Tribune reporters reviewed police shootings from 2010 through 2015. The investigation revealed that foot chases played a role in more than a third of the 235 cases that ended with someone wounded or killed. (*Id.*). The data further showed that about half of the foot pursuits began as police attempted to stop or question people for curfew violations, public drinking, theft, disturbance calls or other minor offenses. Nearly a quarter of those killed by police during foot chases were struck only in the back. (*Id.*)

---

[2] Chicago Tribune, 92 deaths, 2,623 bullets: Tracking every Chicago police shooting over 6 years. (August 26, 2016.)
[3] Chicago Tribune, A third of police shootings started with foot chases, Tribune analysis finds. (Septemb 7, 2016)

33. On January 13, 2017, the United States Department of Justice announced their investigative findings involving the Chicago Police Department. The investigation concluded that CPD practices unnecessarily endanger officers and result in unnecessary and avoidable uses of force. This results from systemic deficiencies in training and accountability, including the failure to train officers in de-escalation and the failure to conduct meaningful investigations of uses of force. The Justice Department finding included the following pattern and/or practice of using force, including deadly force, that is unreasonable, in violation of the Fourth Amendment:

   a. Shooting at fleeing suspects who presented no immediate threat;
   b. Shooting at vehicles without justification;
   c. Using less-lethal force, including tasers, against people who pose no threat;
   d. Using force to retaliate against and punish individuals;
   e. Using excessive force against juveniles.

34. In addition, the Justice Department found the following practices contribute to the pattern or practice of excessive force:

   a. Failing to effectively de-escalate situations or use crisis intervention to reduce the need for force;
   b. Employing tactics that unnecessarily endanger officers and result in avoidable shootings and other uses of force; and
   c. Failing to accurately document and meaningfully review officers' use of force
   d. Inadequate training and supervision.

35. The Justice Department further found that "CPD has long had detailed policies regarding vehicle pursuits. It does not have a foot pursuit policy. It should." (*Id.* p 26.) The investigators concluded that some of the most problematic shootings occurred when a lone officer closed in on a subject, greatly increasing the risk of serious or deadly force incident. (*Id.*).

36. The Justice Department found that the CPD's pattern and practice of unreasonable force included shooting at fleeing suspects who presented no immediate threat. The investigation found that in those instances, CPD administrators took the officers' reporting of the events as true, even where there was contrary evidence.

37. Between 2013 and 2018 there were instances of Chicago police officers shooting fleeing suspects while unarmed or when not posing a threat to those around them:

   a. Christen Green was shot in the back while running from Chicago police officers.
   b. On October 12, 2014, Ronald Johnson was shot in the back and died while running from the police.
   c. Laquan McDonald was shot 16 times and died while many of those shots being to his back while walking away from and not posing a threat to officers.
   d. On July 28, 2016, Paul O'Neal was shot in the back and died while running from police.
   e. An unidentified man was shot in the buttocks while running from the police.
   f. The DOJ report identified other instances of police involved shootings of fleeing suspects.

38. In August 2017, the Illinois Attorney General sued the City of Chicago based on CPD's civil rights abuses. The lawsuit ended with a Consent Decree, effective March 2, 2019 [4]. The Consent Decree seeks to ensure that Chicago police officers are provided with training, resources, and support they need. The Consent Decree requires changes in the areas of community policing as well as the use of force. (Consent Decree ¶2.)

39. In March of 2021, the Independent Monitor released the third period report for the court's review. (March 1, 2020-December 31,2020). The Monitor found that the City of Chicago failed to comply with the majority of reforms set forth in the Consent Decree.[5] The city missed 26 of 43 agreed-upon deadlines. The City also failed to meet "preliminary compliance," which is simply defined as creating a compliant policy.

40. With respect to foot pursuits, the Monitor found that the percentage of foot pursuits ending in some level of force for the third reporting period *actually increased* by 6.1 percent from the second reporting period. (*Id.* at p 280.) Additionally, the City failed to reach full

---

[4] http://chicagopoliceconsentdecree.org/wp-contents/uploads/2019/02/Final-Consent Decree.

7

compliance in developing a supplemental foot pursuit training bulletin that reflects best practices from foot pursuit policies in other jurisdictions. (*Id*. at 286.)

41. On information and belief, the CPD did not have a foot pursuit policy and/or the training necessary to implement an appropriate policy when Anthony was killed. On April 5, 2021, Mayor Lightfoot acknowledged that foot pursuits often lead to a "dangerous environment" for all involved, as officers' "adrenaline is pumping," and they could be separated from their partner. Mayor Lightfoot added that "Foot pursuits present a significant safety issue for officer safety, but also community safety, for the pursued and for bystanders."

42. Before Mayor Lightfoot was even elected, she spoke about the urgent need for a foot pursuit policy, stating that the department should not wait until the 2021 consent decree deadline to do so.

43. Despite Mayor Lightfoot being inaugurated in May of 2019, two-years later when Anthony Alverez was killed, no foot-chase policy was in place.

44. From March of 2020 until the beginning of 2021 there were 1,300 police foot pursuits, with 382 ending with the use of force.

45. Because there was no foot chase policy in the years preceding Anthony Alvarez's death, the City knew that unconstitutional use of force did and would continue to occur during foot chases.

**B. The City's Failure to Supervise and Discipline Has Led to a Police Culture of Impunity.**

46. The Defendant City of Chicago, through its subsidiary the Chicago Police Department and the Civilian Office of Police Accountability (COPA), has established certain policies and procedures regarding the investigation of police involved shootings.

47. Defendant City of Chicago, through the Chicago Police Department and COPA, and its predecessor agencies, the Independent Police Review Authority (IPRA) and Office of Professional Standards (OPS), has historically been unwilling to fairly and impartially investigate and/or arrive at arrive at honest, fair, and just conclusions regarding officer involved shootings.

48. The City has developed a pattern of *de facto* policies and practices that actually impede the investigation of officer involved shootings, which are designed to support the officer's version of events regardless of the other evidence that was developed, or should have been developed, in the investigation.

49. The historical failure of the City of Chicago to fairly and impartially investigate officer involved shootings and discipline the involved officer has resulted in culture within the CPD where officers know they can shoot a citizen with impunity, with full knowledge that their conduct will not be challenged or subjected to a legitimate investigation.

50. The City's policies and practices in failing to conduct legitimate and impartial investigations into officer involved shootings has helped create a Code of Silence culture in which officers expect to use force and not be questioned about the need for or propriety of their use of force.

51. On December 9, 2015, Chicago Mayor Rahm Emanuel acknowledged the existence of this Code of Silence within the Chicago Police Department in a public speech to the City Council.

52. In April of 2016, Defendant City of Chicago's own Police Accountability Task Force made certain "Overarching Findings" that there was a "racist mentality" within the Chicago Police Department that the "ends justify the means" and that "the collective bargaining

agreements between the police unions and the City have essentially turned the Code of Silence into official policy."

53. On January 13, 2017, the United States Department of Justice Civil Rights Division ("DOJ") issued a report at the conclusion of a 13-month investigation into the policies and practices of the Chicago Police Department.

54. the 2017 DOJ investigation found "Systemic deficiencies" by the City of Chicago through its subordinate agencies the CPD and IPRA, including "the failure to review and investigate officer use of force [which] has helped create a culture in which officers expect to use force and not be questioned about the need for or propriety of that use."

55. The 2017 DOJ investigation of the Chicago Police Department also concluded that "CPD has engaged in a pattern or practice of unreasonable force in violation of the 4th Amendment and that the "deficiencies in CPD's training, supervision and accountability and other systems have contributed to that pattern or practice."

56. The failure and/or refusal by the Defendant City of Chicago, through the Department, to properly investigate or discipline the use of deadly force by officers signals a tolerance by the City of Chicago of the improper use of deadly force by Chicago Police Officers and constitutes a deliberate indifference by the Chicago.

57. The failure and refusal by the City of Chicago, through the Department, to properly investigate and discipline the use of deadly force by sworn Chicago Police Officers in the same manner and form, and subject to the same standards, as those used by the Department in its investigations of the use of such force by civilians, creates unwarranted and illegal favored treatment for a class of citizens, Chicago Police Officers, as compared with the treatment afforded civilian citizens.

58. The acts and omissions of the City of Chicago, through the policies and procedures implemented by the Chicago Police Department, were a deliberate and malicious deprivation of Anthony Alvarez's Constitutional Rights as guaranteed by the Fourth Amendment to the Constitution, and made applicable to the states by the Fourteenth Amendment.

59. Individually and collectively, the above described *de facto* policies and practices of the City of Chicago results in the culture and endemic attitude among members of the Chicago Police Department, including Defendant Officers, that they may engage in excessive force against the citizenry with impunity and without fear of official consequence.

60. This lack of accountability and discipline is well known among Chicago Police Officers and contributes to a culture where CPD officers, including Defendant Solano, understand that if they resort to using excessive force, they will not be held accountable for their misconduct.

61. The Defendant City of Chicago's systemic failures and *de facto* policies and procedures outlined above were the moving force and proximate cause to the fatal use of force by Defendant Solano that took the life of Anthony Alvarez.

62. The Defendants knew that that their reckless and constitutionally unreasonable approach would not be questioned, investigated, or disciplined.

63. Defendant Solano knew that he could recklessly pursue civilians, putting them in great danger, with little to no repercussions.

64. Defendant Solano knew that he could shoot a fleeing civilian in the back and face little to no repercussions.

65. The City repeatedly fails to discipline officers involved in shootings and officers who unholster their guns when they should not.

66. Indeed, Officer Solano still had his gun and badge months later, when he pulled his gun on another motorist during a road rage incident.

67. Chicago final policy makers have long been aware of these problems (the City's *de facto* policies and its practices) and have been deliberately indifferent or worse to the Constitutional violations that they cause.

68. The City of Chicago's practices and *de facto* policies described above were the moving force behind Anthony Alvarez's death.

## Count I
### 42 U.S.C. Section 1983
### Fourth Amendment – Excessive Force Against Both Defendant Officers

69. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

70. The actions of Defendant Officers as detailed above in their unconstitutionally aggressive stop/foot pursuit and in Defendant Solano's use of deadly force, constitutes unreasonable, unjustifiable, and excessive force; and violated Anthony Alvarez's rights under the Fourth Amendment to the United States Constitution.

71. As a result of the Defendant Officers' misconduct described above, Anthony Alvarez suffered injury including pain and suffering, fear, and death.

## Count II
### 42 U.S.C. § 1983
### Fourth Amendment – Failure to Intervene Against Both Defendant Officers

72. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

73. As described more fully in the preceding paragraphs, during the constitutional violations described herein, both Defendants had the opportunity to prevent the unconstitutionally aggressive stop/foot pursuit misconduct, but failed to prevent the misconduct

described in this Complaint.

74. As a result of the Defendant Officers' failure to intervene, Anthony Alvarez suffered injury including pain and suffering, fear, and death.

### Count III
### State Law Claim
### Wrongful Death—Defendant Solano

75. The Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

76. The Plaintiff, GISELLE HIGUERA, brings this cause of action pursuant to the provisions of 740 ILCS 180/1, et seq., the Illinois Wrongful Death Act.

77. At all relevant times, Defendant Officer Solano, was acting as a duly authorized agent of Defendant City of Chicago, owed Anthony Alvarez a duty to refrain from wanton and willful acts and omissions, which could cause him harm.

78. Defendant Officer Solano, by and through his acts and/or omissions and as an agent of Defendant City of Chicago, breached his duty to Anthony Alvarez, by acting in an intentional manner, a willful and wanton manner, and with utter indifference and conscious disregard for Anthony Alvarez's health and safety in one or more of the following respects:

   a. Pursued Anthony Alvarez in vehicle and on foot without justification;
   b. Shot Anthony Alvarez in the back without lawful justification;
   c. Used force against Anthony Alvarez in a manner that violated CPD policy;
   d. Used excessive and inappropriate deadly force against Anthony Alvarez when he shot him without lawful justification;
   e. Used excessive and inappropriate deadly force without lawful justification;
   f. Failed to warn Anthony Alvarez of the impending use of deadly force;
   g. Failed to implement and follow the use of force model used by law enforcement in Illinois;
   h. Failed to use less dangerous force before using deadly force;
   i. Was otherwise willful and wanton.

79. As a direct and proximate result of Defendant Officer Solano acts and omissions, Anthony Alvarez, died on March 31, 2021.

80. Anthony Alvarez is survived by his minor daughter.

81. By reason of the death of Anthony Alvarez, A.A. has suffered pecuniary damages, including loss of support, comfort, love, affection, protections and society of her father.

### Count IV
### State Law Claim
### Survival—Defendant Solano

82. The Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

83. The Plaintiff, GISELLE HIGUERA, as administrator of the estate of Anthony Alvarez brings this cause of action under the provisions of the Survival Act of Illinois, 755 ILCS 5/27-6.

84. Defendant Officer Solano, acting as a duly authorized agent of Defendant City of Chicago, owed Anthony Alvarez a duty to refrain from wanton and willful acts and omissions, which could cause him harm.

85. Defendant Officer Solano, by and through his acts and/or omissions and as an agent of the Defendant City of Chicago, breached his duty to Anthony Alvarez, by acting in an intentional manner, willful and wanton manner, and/or utter indifference and conscious disregard for Anthony Alvarez's health and safety in one of more of the following acts:

    a. Pursued Anthony Alvarez in their vehicle and on foot without justification;
    b. Shot Anthony Alvarez in the back without lawful justification;
    c. Used force against Anthony Alvarez in a manner that violated CPD;
    d. Used excessive and inappropriate deadly force on Anthony Alvarez when he shot him in the back without lawful justification;
    e. Used excessive and inappropriate deadly force without lawful justification;
    f. Failed to warn Anthony Alvarez of the impending use of deadly force;

      g. Failed to implement and follow the use of force model used by law enforcement in Illinois;
      h. Failed to use less dangerous force before using deadly force;
      i. Was otherwise willful and wanton.

86. As a direct and proximate result of Defendant Officer Solano's willful and wanton acts and/or omissions, Anthony Alvarez, suffered damages, including physical and emotional injuries, past medical expense, and conscious pain and suffering while still alive on the ground, writhing in pain, after being shot.

87. As a direct and proximate result of Defendant Officer Solano's acts and omissions, Anthony Alvarez, died on March 31, 2021.

88. As a direct and proximate result of one or more of the acts and/or omissions, caused Anthony Alvarez, to lose his change of survival.

89. As a further direct and proximate result of Defendant Officer Solano's willful and wanton acts, Anthony Alvarez suffered injuries, disfigurement, economic loss, pain and suffering, emotional trauma, and loss of chance of survival, for which Anthony Alvarez would have been entitled to compensation from Defendant Officer Solano, had he survived.

### Count V
### State Law Claim
### Wrongful Death—Defendant City of Chicago

90. The Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

91. The Plaintiff, GISELLE HIGUERA, deceased, brings this cause of action pursuant to the provisions of 740 ILCS 180/1, et seq., the Illinois Wrongful Death Act.

92. The Defendant City of Chicago, through its agents, owed Anthony Alvarez, a duty to refrain from wanton and willful acts and omissions, which could cause him harm.

93. The Defendant City of Chicago, by and through the acts and/or omissions of its agent, employee, and police officer, Defendant Officer Solano, breached its duty to Anthony Alvarez, in Defendant Officer Solano acting in an intentional manner, willful and wanton manner, and/or, with utter indifference and conscious disregard for Anthony Alvarez's health and safety in one or more of the following:

    a. Pursued Anthony Alvarez in their vehicle and on foot without justification;
    b. Shot Anthony Alvarez in the back without lawful justification;
    c. Used force against Anthony Alvarez in a manner that violated CPD policy;
    d. Used excessive and inappropriate deadly force on Anthony Alvarez when he shot Alvarez in the back without lawful justification;
    e. Used excessive and inappropriate deadly force without lawful justification;
    f. Failed to warn Anthony Alvarez of the impending use of deadly force;
    g. Failed to implement and follow the use of force model used by law enforcement in Illinois;
    h. Failed to use less dangerous force before using deadly force;
    i. Was otherwise willful and wanton.

94. The Defendant City of Chicago, by and through the acts/omissions of its agents, employees, officers, breach its duty of care to Anthony Alvarez in an intentional manner, willful and wanton manner, and/or utter indifference and conscious disregard for citizens' health and safety, which cause the death of Anthony Alvarez in one or more of the following:

    a. Maintained a custom and practice of using unjustified, deadly force during foot pursuits of individuals;
    b. Maintained a custom and practice of failing to train officers on the proper use of force on fleeing individuals;
    c. Ignored that its officers had repeatedly shot fleeing individuals who were engaged for minor offenses, traffic violations, or city ordinance violations;
    d. Ignored repeated calls from the Department of Justice and other agencies for increased training and new policies related to foot pursuits and fleeing individuals;
    e. Failed to implement increased training and polices related to the use of force during foot pursuits;
    f. Was otherwise willful and wanton.

95. As a direct and proximate result of Defendant Officer Solano's acts and omissions, Anthony Alvarez, died on March 31, 2021.

96. Anthony Alvarez is survived by his minor daughter.

97. By reason of the death of Anthony Alvarez, his heir, A.A. a minor has suffered pecuniary damages, including loss of support, comfort, love, affection, protections and society of her father.

## Count VI
### State Law Claim
### Survival—Defendant City of Chicago

98. The Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

99. The Plaintiff, GISELLE HIGUERA, as administrator of the estate of Anthony Alvarez brings this cause of action under the provisions of the Survival Act of Illinois, 755 ILCS 5/27-6.

100. The Defendant City of Chicago, through its officers, owed Anthony Alvarez a duty to refrain from wanton and willful acts and omissions, which could cause him harm.

101. The Defendant City of Chicago, by and through the acts and/or omissions of its agent, employee, and police officer, Defendant Officer Solano, breached its duty to Anthony Alvarez, in Defendant Officer Solano acting in an intentional manner, willful and wanton manner, and/or, with utter indifference and conscious disregard for Anthony Alvarez's health and safety in one or more of the following:

   a. Pursued Anthony Alvarez in their vehicle and on foot without justification;
   b. Shot Anthony Alvarez in the back without lawful justification;
   c. Used force against Anthony Alvarez in a manner that violated CPD policy;
   d. Used excessive and inappropriate deadly force on Anthony Alvarez when he shot him in the back without lawful justification;
   e. Used excessive and inappropriate deadly force without lawful justification;
   f. Failed to warn Anthony Alvarez of the impending use of deadly force;
   g. Failed to implement and follow the use of force model used by law enforcement in Illinois;
   h. Failed to use less dangerous force before using deadly force;

      i.      Was otherwise willful and wanton.

    102.     The Defendant City of Chicago, by and through the acts/omissions of its agents, employees, officers, breach its duty of care to Anthony Alvarez in an intentional manner, willful and wanton manner, and/or utter indifference and conscious disregard for citizens' health and safety, which caused the death of Anthony Alvarez in one or more of the following:

    a.     Maintained a custom and practice of using unjustified, deadly force during foot pursuits of individuals;
    b.     Maintained a custom and practice of failing to train officers on the proper use of force on fleeing individuals;
    c.     Ignored that its officers had repeatedly shot fleeing individuals who were engaged for minor offenses, traffic violations, or city ordinance violations;
    d.     Ignored repeated calls from the Department of Justice and other agencies for increased training and new policies related to foot pursuits and fleeing individuals;
    e.     Failed to implement increased training and polices related to the use of force during foot pursuits;
    f.     Was otherwise willful and wanton.

    103.     As a direct and proximate result of the Defendant City of Chicago's willful and wanton acts and/or omissions Anthony Alvarez suffered damages, including physical and emotional injuries, past medical expenses, and conscious pain and suffering while still alive and on the ground, writhing in pain, after being shot.

    104.     As a direct and proximate result of Defendant City of Chicago's acts and omissions, Anthony Alvarez, died on March 31, 2021.

    105.     As a direct and proximate result of said willful and wanton acts and/or omissions Anthony Alvarez lost his chance of survival.

    106.     As a direct and proximate result of Defendant City of Chicago's willful and wanton acts, Anthony Alvarez suffered injuries of a personal and economic nature, including disability, pain and suffering, emotional trauma, loss of chance of survival, for which Anthony

Alvarez would have been entitled to receive compensation from Defendant City of Chicago, had he survived.

### Count VII
### State Law Claim
### *Respondeat Superior*—Defendant City of Chicago

107. The Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

108. At all relevant times, Defendant Officers were members and employees of the City of Chicago Police Department acting within the scope and authority of their employment

109. The Defendant City of Chicago, as principal, is liable for the actions of its agents under the doctrine of *respondeat superior*.

110. Should the Defendant Officers be found liable for the acts alleged above, the Defendant Officers and City of Chicago would be liable to pay the Plaintiff any judgment obtained against the Defendants.

### Count VIII
### State Law Claim
### Indemnification—Defendant City of Chicago

111. The Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

112. Illinois law provides that public entities are directed to pay any compensatory tort judgment for damages for which employees are liable within the scope of their employment activities.

113. All of the Defendant Officers are employees of the City of Chicago Department who acted within the scope of their employment in committing the misconduct described herein.

114. Should the Defendant Officers be found liable for the acts alleged above, the Defendant Officers and City of Chicago would be liable to pay the Plaintiff any judgment obtained against the Defendants.

WHEREFORE, Plaintiff demands judgment against the Defendants: Solano, Encarnacion, and the City of Chicago; jointly and severally, for compensatory damages and because the Defendant Officers acted maliciously, wantonly, or oppressively, punitive damages against the individual Defendants in their individual capacities plus the costs of this action and attorney's fees, and for such other and additional relief as this court deems equitable and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Christopher R. Smith

One of Plaintiff's Attorneys

Christopher R. Smith
CRS Trial Group, LLC
The Monadnock Building
53 West Jackson Boulevard, Suite 856
Chicago, IL 60604
312.432.0400
chris@crstrialgroup.com