*Higuera v. City, et al.,* 22 CV 00964

# EXHIBIT A

| Chicago Police Department | | | **General Order G03-02** |
|---|---|---|---|
| **DE-ESCALATION, RESPONSE TO RESISTANCE, AND USE OF FORCE** | | | |
| **ISSUE DATE:** | 31 December 2020 | **EFFECTIVE DATE:** | 15 April 2021 |
| **RESCINDS:** | 29 February 2020 version | | |
| **INDEX CATEGORY:** | 03 - Field Operations | | |
| **CALEA:** | | | |

I.  **PURPOSE**

   This directive:

   A. sets forth Department policy regarding sworn members' and detention aides' <u>de-escalation, response to resistance, and</u> use of force.

   B. satisfies CALEA Law Enforcement Standard Chapter 4.

II. **DEPARTMENT POLICY**

   A. **Sanctity of Human Life.** <u>The Department's highest priority is the sanctity of human life. The concept of the sanctity of human life is the belief that all human beings are to be perceived and treated as persons of inherent worth and dignity, regardless of race, color, sex, gender identity, age, religion, disability, national origin, ancestry, sexual orientation, marital status, parental status, military status, immigration status, homeless status, source of income, credit history, criminal record, criminal history, or incarceration status. Department members will act with the foremost regard for the preservation of human life and the safety of all persons involved.</u>

   B. **Public Cooperation.** A strong partnership with the public is essential for effective law enforcement. Inappropriate or excessive uses of force damage that partnership and diminish the public trust that is a cornerstone of policing in a free society. Department members will act:

   1. with a high degree of ethics, professionalism, and respect for the public.

   2. in a manner that promotes trust between the Department and the communities that it serves.

   C. **Core Principle.** The Chicago Police Department seeks to gain the voluntary compliance of <u>persons</u>, when consistent with personal safety. <u>The Department expects its members to develop and display the skills and abilities to act in a manner to eliminate the need to use force and resolve situations without resorting to force. Department members will only resort to the use of force when required under the circumstances to serve a lawful purpose.</u>

   D. **Assessing Uses of Force.** The Chicago Police Department recognizes that Department members are often forced to make split-second decisions-in circumstances that are tense, uncertain, and rapidly evolving-about the <u>use of force required</u> in a particular situation.

   1. These decisions must therefore be judged based on the totality of the circumstances known by the member at the time and from the perspective of a reasonable Department member on the scene, in the same or similar circumstances, and not with the benefit of 20/20 hindsight.

   2. Department members involved in a use of force incident will make an independent assessment and decision to use force based on the totality of the circumstances <u>and whether such force is objectively reasonable, necessary, and proportional. Department members</u> will be individually responsible for articulating the specific details that justify their use of force.

   3. Nothing in this policy requires members to take actions, or fail to take actions, that unreasonably endanger themselves or others.

    4.  Nothing in this policy precludes the legally mandated oversight or assessment of a Department member's use of force consistent with the procedures established in this policy.

 E. Whenever a use of force incident result in a potentially life-threatening injury or death, Department members will refer to the Department directive titled "<u>Firearm Discharge and Officer-Involved Death Incident Response and Investigation</u>" for additional notifications, response procedures, and investigative responsibilities.

## III. USE OF FORCE - WHEN AUTHORIZED

 A. **Definition of Force.** Force is defined as any physical contact by a Department member, either directly or through the use of equipment, to compel a *person's* compliance.

 B. **Use of Force: Objectively Reasonable, Necessary, and Proportional.** Department members may only use force that is objectively reasonable, necessary, and proportional, under the totality of the circumstances, in order to ensure the safety of a member or third person, stop an attack, make an arrest, *bring a person or situation safely under control*, or prevent escape.

   1. <u>Objectively reasonable.</u> The main issue in evaluating every use of force is whether the amount of force used by the member was objectively reasonable in light of the totality of the circumstances faced by the member on the scene. Reasonableness is not capable of precise definition or mechanical application. Factors to be considered by the member *may include, but are not limited to*:

     a. whether the *person* is posing an imminent threat to the member or others.

     b. the risk of harm, level of threat or resistance presented by the *person*.

     c. the *person's* proximity or access to weapons.

     d. *whether de-escalation techniques can be employed or would be effective.*

     e. *the availability of other resources.*

   2. <u>Necessary.</u> *Department members will use the minimum amount of force needed to provide for the safety of any person or Department member, stop an attack, make an arrest, bring a person or situation safely under control, or prevent escape. Department members will continually assess the necessity of the use of force and whether alternatives may be employed, including the use of de-escalation techniques, other response options, and the availability of other resources.*

   3. <u>Proportional.</u> Department members will use only the force that is proportional to the threat, actions, and level of resistance offered by a *person*. This may include using greater force or a different type of force than that used by the *person*. The greater the threat and the more likely that the threat will result in death or serious physical injury, the greater the level of force that may be necessary to overcome it. When or if the *person* offers less resistance, however, the member will decrease the amount or type of force accordingly.

 C. **De-escalation.** *Department members are required to use de-escalation techniques to prevent or reduce the need for force, unless doing so would place a person or a Department member in immediate risk of harm, or de-escalation techniques would be clearly ineffective under the circumstances at the time.*

   **NOTE:** *For example, when a zone of safety cannot be established, a person is at immediate risk of physical harm, or there is an immediate need for a Department member to accomplish lawful objectives that cannot be achieved through force mitigation.*

   1. *The use of de-escalation techniques will include continually assessing the situation, considering individualized factors such as:*

      a. *the subject's age, disability, or physical condition (e.g., known, suspected, or perceived behavioral or mental health conditions; intellectual, developmental, psychiatric, or physical disability; vision, hearing, or neurological impairment).*

      b. *the risk posed by the subject.*

      c. *if the subject is restrained, injured, or in crisis.*

2. *Department members will modify the use of force as circumstances change and in ways that are consistent with officer safety, including stopping the use of force when it is no longer necessary. Examples of de-escalation techniques include but are not limited to:*

      a. *providing a warning and exercising persuasion and advice prior to the use of force.*

      b. *determining whether the member may be able to stabilize the situation through the use of time, distance, or positioning to isolate and contain a subject (e.g., establishing a zone of safety).*

      c. *requesting additional personnel to respond or make use of specialized units or equipment including crisis-intervention-team trained officers, as necessary and appropriate.*

D. **Prohibitions.**

1. The use of excessive force, unwarranted physical force, or unlawful force by a Department member is prohibited and will not be tolerated.

2. Department members are prohibited from using force based on bias or any other protected characteristic as outlined in the Department directive titled "Prohibition Regarding Racial Profiling and Other Bias Based Policing," including bias against a person's race, color, sex, gender identity, age, religion, disability, national origin, ancestry, sexual orientation, marital status, parental status, military status, source of income, credit history, criminal record, criminal history, financial status, immigration status, or homeless status.

3. Force used as punishment or retaliation (e.g., force used to punish or retaliate for fleeing, resisting arrest, or insulting a Department member) is prohibited.

4. Force used in response to a person's lawful exercise of First Amendment rights (e.g., protected speech, lawful demonstrations, observing or filming police activity, or criticizing a Department member or conduct) is prohibited.

    **NOTE:** First Amendment rights are not absolute and are subject to reasonable time, place, manner restrictions. Further guidance may be found in the Department directive titled "The First Amendment Rights."

E. **Additional procedures and prohibitions.**

1. For further procedures on de-escalation, the principles of Force Mitigation, and when force is authorized, Department members will refer to the Department directive titled "Response to Resistance and Force Options."

2. For further procedures on when Department weapons are authorized and prohibitions on weapon use, Department members will refer to the Department directives titled:

      a. "Firearm Discharge Incidents - Authorized Use and Post-Discharge Administrative Procedures."

      b. "Taser Use Incidents."

      c. "Oleoresin Capsicum (OC) Devices And Other Chemical Agent Use Incidents."

      d. "Canine Use Incidents."

      e. "Baton Use Incidents."

## IV. USE OF DEADLY FORCE

Use of Deadly Force: Necessary to Prevent Death or Great Bodily Harm. The following additional policies apply to the use of deadly force:

- A. <u>Definition of Deadly Force</u>. Deadly force is force by any means that is likely to cause death or great bodily harm. It includes but is not limited to:

    1. firing of a firearm in the direction of the person to be arrested.

    2. firing of a firearm at a vehicle in which the person to be arrested is riding.

    3. intentional striking of a *person's* head or neck with an impact weapon.

    4. application of a chokehold, carotid artery restraint, or other maneuvers for applying direct pressure on a windpipe or airway.

- B. <u>Definition of Imminent Threat.</u> A threat is imminent when it is objectively reasonable to believe that:

    1. the *person's* actions are immediately likely to cause death or great bodily harm to the member or others unless action is taken; and

    2. the *person* has the means or instruments to cause death or great bodily harm; and

    3. the *person* has the opportunity and ability to cause death or great bodily harm.

- C. <u>Last Resort.</u> The use of deadly force is a last resort that is permissible only when necessary to protect against an imminent threat to life or to prevent great bodily harm to the member or another person. Consistent with this requirement, a sworn Department member may use deadly force only when such force is necessary to prevent:

    1. death or great bodily harm from an imminent threat posed to the sworn member or to another person.

    2. an arrest from being defeated by resistance or escape, where the person to be arrested poses an imminent threat of death or great bodily harm to a sworn member or another person unless arrested without delay.

- D. <u>Prohibitions:</u>

    1. Department members will not use deadly force:

        a. on a fleeing *person* unless the *person* poses an imminent threat, as defined above.

        b. against a *person* who is a threat only to himself, herself, or property.

    2. **<u>The Chicago Police Department prohibits its members from using</u> chokeholds *or other maneuvers for applying direct pressure on a windpipe or airway*,** *with the sole exception being as an act of last resort, when necessary to protect against an imminent threat to life.*

    3. **<u>The Chicago Police Department prohibits its members from using</u>** carotid artery restraints*, with the sole exception being as an act of last resort, when necessary to protect against an imminent threat to life.*

    4. <u>The Chicago Police Department prohibits its members from using</u> carotid artery restraints, chokeholds, *or other maneuvers for applying direct pressure on a windpipe or airway as a takedown technique or to prevent the destruction of evidence by ingestion.*

## V. MEDICAL ATTENTION

- A. Once the scene is safe and as soon as practical, whenever a *person* is injured, complains of injury, or requests medical attention, Department members:

1. will immediately request appropriate medical aid for the injured person, including contacting emergency medical services (EMS) from the Chicago Fire Department via the Office of Emergency Management and Communications (OEMC).

2. may provide appropriate medical care consistent with their training to any individual who has visible injuries, complains of being injured, or requests medical attention. This may include providing first aid and/or arranging for transportation to an emergency medical facility.

B. *For use of force incidents involving Department members, as soon as it is safe and feasible to do so, members will provide life saving aid consistent with their Department training, including the Law Enforcement Medical and Rescue Training (LEMART) training, to injured persons until medical professionals arrive on scene.*

C. Members will treat injured persons, whether another officer, a member of the public, or a *person*, with dignity and respect.

D. *If the scene is safe and the person in custody is secure, Department members will not interfere with emergency medical personnel when providing treatment to injured persons.*

## VI. ACCOUNTABILITY

A. **Ensure Compliance.** All Department members are obligated to ensure compliance by themselves and other members with Department regulations, policies, and the law. Consistent with the Department directive titled "Complaint and Disciplinary Procedures," Department members will be held accountable for using force that violates law, this directive, or other Department policy.

**REMINDER:** *Department members are reminded that discipline, up to and including separation from the Department, may be administered for any misconduct or violation of policy.*

B. **Retaliation Prohibited.** *Consistent with the Department directive titled* "Prohibition of Retaliation," the Department prohibits any form of retaliation, interference, intimidation, or coercion against a Department member for:

1. reporting misconduct, including a use of force that is allegedly in violation of this directive, or

2. cooperating with any complaint or misconduct investigation.

## VII. DUTY TO INTERVENE AND REPORT

A. **Intervention, Supervisory Intervention, Notifying Superiors.**

1. A Department member who directly observes a use of force and identifies the force as excessive or otherwise in violation of this directive will, except in extraordinary circumstances, act to intervene on the person's behalf. Such action *may include, but is not limited to, verbally or physically intervening* to try to stop the violation. If the member is a supervisor, he or she will issue a direct order to stop the violation.

2. Consistent with the Department directive titled "Complaint and Disciplinary Procedures," any Department member who observes misconduct or becomes aware of information alleging misconduct, including an identified excessive use of force, a reportable use of force incident that was not reported, or a use of force that is otherwise in violation of this directive, will immediately notify his or her supervisor.

B. **Written Reporting Obligation.** Consistent with the Department directive titled "Complaint and Disciplinary Procedures:"

1. Department members who have knowledge of the use of force against a *person* in violation of this directive will submit an individual written report to a supervisor before reporting off duty on the day the member becomes aware of the misconduct.

  2. Department supervisors who have knowledge or receive allegations of a use of force against a *person* in violation of this directive that is subject to the Log Number process will report the information to the Civilian Office of Police Accountability (COPA), including forwarding a report outlining all the information available at the time the allegation was received.

 C. **Accuracy and Candor.** Department members will be responsible at all times:

  1. for truthfully and completely:

   a. reporting each reportable use of force incident consistent with the Department directive titled "Incidents Requiring the Completion of a Tactical Response Report."

   b. describing the facts and circumstances concerning any incident involving the use of force by Department members.

  2. for articulating the specific facts to explain the member's own decision to employ a particular use of force.

## VIII. DEPARTMENT MEMBER BILL OF RIGHTS

Use of Force investigations remain bound by the involved members' respective collective bargaining agreement(s) and the Department directive titled "Department Member Bill of Rights."

## IX. POLICY REVIEW

 A. Consistent with the Department directive titled "Commission on Accreditation for Law Enforcement Agencies (CALEA)," the Department will conduct an annual review of its use of force policies in compliance with the CALEA accreditation requirements.

 B. On a biennial basis, the Department will conduct a comprehensive review of its use of force policies to assess whether the policies meet the requirements of the consent decree (pursuant to State of Illinois v. City of Chicago, Case No. 17-cv-6260), incorporate identified best practices, address observed trends and practices, as necessary, and reflect developments in applicable law.

## X. USE OF FORCE TRAINING

 A. At a minimum, Department members will receive annual training on the laws and Department policies regulating the use of force, including, but not limited to, de-escalation, force options, and appropriate supervision and accountability.

 B. Prior to being approved to carry a Department-authorized weapon or use a weapon for employing a use of force, Department members will be trained on the proper techniques and use of the weapon. Additionally, Department members will:

  1. successfully qualify with their firearms annually.

  2. if Taser certified, successfully participate in the annual Taser recertification program.

  3. receive refresher training on impact weapons and OC Devices biennially.

  4. refer to the Department directives titled:

   a. "Department Approved Weapons and Ammunition" for specific administrative and operational functions of Department-authorized weapons.

   b. "Annual Prescribed Weapon Qualification Program And Taser Recertification" for specific procedures and requirements for firearms qualification and Taser recertification.

(Items identified by *italics/double underline* have been added or revised.)

David O. Brown<br>
Superintendent of Police

T20-120 MWK/TSS

**ADDENDA:**

1. G03-02-01 - Response to Resistance and Force Options
2. G03-02-02 - Incidents Requiring the Completion of a Tactical Response Report
3. G03-02-03 - Firearm Discharge Incidents - Authorized Use and Post-Discharge Administrative Procedures
4. G03-02-04 - Taser Use Incidents
5. G03-02-05 - Oleoresin Capsicum (OC) Devices And Other Chemical Agent Use Incidents
6. G03-02-06 - Canine Use Incidents
7. G03-02-07 - Baton Use Incidents
8. G03-02-08 - Department Review of Use of Force