UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GISELLE HIGUERA Administrator for the Estate of Anthony Alvarez and as mother of A.A., a minor, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 22-cv-00964 |
| v. | ) ) | Hon. Steven C. Seeger |
| City of Chicago and City of Chicago Police Officers Evan Solano, Star No. 12784 and Sammy Encarnacion, Star No. 11790, | ) ) ) ) | Hon. Mag. Jeffrey Cole |
| Defendants. | ) | |

**PLAINTIFF'S MOTION TO STRIKE AND RESPONSE TO DEFENDANT OFFICERS' MOTIONS TO DISMISS COUNTS I AND II OF PLAINTIFF'S COMPLAINT**

Plaintiff, GISELLE HIGUERA, as administrator of the Estate of Anthony Alvarez represented by Christopher R. Smith, Christopher Smith Trial Group, LLC, responds to Defendant Officers' Joint Motions to Dismiss: Defendant Solano's Partial Motion to Dismiss Count I; Defendant Solanos Motion to Dismiss Count II; and Defendant Encarnacion's Motion to Dismiss Counts I and II as follows:

**Introduction**

On November 30, 2022, the Court entered an Order granting in-part and denying in-part Defendant Officers' original Motion to Dismiss. On March 3, 2023, Plaintiff filed her Amended Complaint. To be clear, Plaintiff's filing of the Amended Complaint was not a request for reconsideration of the Court's prior ruling. Even so, Defendants primarily attack Plaintiff for not changing her allegations and facts to better fit the Court's Order. Plaintiff did not remove any material facts or allegations from her Complaint, because she correctly surmised that Defendants would see any amendment as an opportunity to collaterally attack the Court's original Order.

Because Defendants' Motion is barred by federal Rule 12(g)(2), and to avoid even more duplicative litigation, Plaintiff Moves to Strike the Defendant Officers' Motion. Plaintiff has not advanced any new theory of liability.

Defendants' secondary argument attacks the additional facts included in the Amended Complaint. These facts include Defendant Encarnacion reporting that he fired his weapon and was missing a bullet from the magazine. (The bullet remains unaccounted for.) The Court's November 2022 Ruling kept Defendant Encarnacion in the case, regardless of whether he fired his weapon at Anthony Alvarez. This added allegation about the missing bullet is a known fact that is being investigated in discovery. It is difficult to imagine an innocent explanation for this—and given his track record—it is possible that Encarnacion *did* fire his weapon, or that he was too intoxicated to know that he did not. The Court kept Defendant Encarnacion in the case, not for the possibility that he fired his weapon, but for Plaintiff's Failure to Intervene Count. The Court held that,

> [A]nswering whether Defendant Encarnacion had an opportunity to intervene is a fact-intensive exercise. The facts can fill in the gaps, and discovery will shed light on the facts. The complaint may not offer a lot of details, but the details can come later. The complaint includes enough information to put Defendant Encarnacion on notice, which is all that the Federal Rules require. The motion to dismiss the failure-to-intervene claim (Count II) against Defendant Encarnacion is hereby denied.

Doc. No. 61. pp. 4-51.

Neither Defendants' motion, nor the attached video link could disturb this Ruling. Per that Order, Plaintiff does not need Encarnacion to be an active shooter in order to establish liability against him.

Defendants are seeking to turn notice pleading into something dystopian. A Rule 12(b)(6) ruling on whether an Amended Complaint is properly pled, should not be re-examined in light of

2

every new fact in discovery. Likewise, a plaintiff should not have to amend every time she discovers a supporting fact. As of this filing, Plaintiff has not yet had the opportunity to depose Defendant Encarnacion. Plaintiff will ask him many important questions: questions about his missing bullet, when he last fired his gun, why he believed he shot at Mr. Alvarez, and why he told Detective Tedeschi that he saw Defendant Solano fire at Mr. Alvarez before Alvarez turned towards Defendant Solano.[1] Detective Tedeschi was deposed on March 21, 2023 after the Amended Complaint was filed. Plaintiff has not attached these documents because she does not believe that an evidentiary back and forth is appropriate in response to a motion to dismiss.

Defendant Encarnacion's missing bullet and his confusion about being a shooter are, at best for him, powerful evidence of his recklessness towards Mr. Alvarez's life. Far from helping the Defendants, Encarnacion's missing bullet raises additional questions about his involvement, including whether he was an active participant in the excessive force.

The Motion to Dismiss, as recycled by Defendants has already been decided. If they are seeking summary judgement, there is a proper time and place to attempt such a motion. Justice is not well served by crediting a one-sided factual presentation, a.k.a a one-sided summary judgment motion, dressed up as a Motion to Dismiss. Defendants Officers' motion is nothing more than attempting a second bite at the apple and should not be granted. Plaintiff filed her Amended Complaint, to highlight how ridiculous the Defendant City's Motion to dismiss was. They City has no basis to contest Plaintiff's claims on the face of the pleadings. That Count, unlike the ones against the Defendant Officers, has not been ruled on, and is still at issue. Because Defendant Officers' motion is largely the same, Plaintiff needs to present defenses that

---

[1] This information is contained in Detective Tedeschi's interview of Encarnacion, from just hours after the shooting as documented in his general progress report. Plaintiff does not believe that it is appropriate to lard up a Response to a Motion to dismiss with the whole evidentiary record to respond to an inappropriate argument in a motion to

3

the Court ruled on previously—because she is not in a position to waive those arguments.

## Motion to Strike

### I. Defendant Officers Motion to Dismiss should be Stricken as a Violation of Rule 12(g)(2)

Rule 12(g)(2) prevents Parties from rehashing substantially the same motion, repeatedly throughout discovery. Rule 12(g)(2) also prevents filing additional motions on other grounds if those grounds were available at the time the original motion was filed. Rule 12(g)(2) reads,

> (2) Limitation on Further Motions. "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."

F.R.C.P. 12(g)(2)

"Rule 12(g) generally precludes a defendant from bringing successive motions to dismiss raising arguments that the defendant failed to raise at the first available opportunity." *Muller v. Morgan, et. al.,* Case No. 12 CV 1815, (N.D.Ill. June 3, 2013); *citing Makar Issues & Rights, Ltd. v. Tellabs, Inc.*, No. 02 C 4356, 2008 U.S. Dist. LEXIS at *9 (N.D. Ill. May 22, 2008). Here Defendant has brought a second Rule 12(b)(6) motion, even though the basis for Plaintiff's claims, and the claims themselves, have not changed. Defendants cannot by filing a second 12(b)(6) motion cannot force the Plaintiff to waive the positions that she previously asserted. Plaintiff has responded to the Second Motion, in the event that the Court chooses not to Strike. Plaintiff cannot waive her prior arguments, and has included those arguments first raised in her first response in addition to the new issues addressed herein.

### Plaintiff's Response to Defendant Officers' Partial Motion

### I. Factual Background

---

dismiss. In Response to a Motion for Summary Judgment, Plaintiff would marshal the whole factual record, which is why Defendants are desperate to try to dispose of this claim now.

On the evening of March 31, 2021, Anthony Alvarez was walking with two grocery bags in one hand and what appears to have been a Styrofoam cup in the other, when Defendants Solano and Encarnacion saw him. The Defendant Officers did not witness Anthony breaking any law. The night prior to the shooting, the Defendants followed Anthony in their unmarked police vehicle without notifying dispatch or activating their body-worn cameras. Now, near midnight on March 31, 2021, Defendant Encarnacion said, "there's Alvarez" to his partner Defendant Solano. The Defendant Officers agreed to go after him. There were no warrants for Anthony's arrest, nor was there any investigative alert to notify officers to stop or speak to Anthony. Anthony had no criminal convictions. Seeing Anthony holding the grocery bags and Styrofoam cup, they did a sharp U-turn and drove their police car right at him. Anthony had to choose between being hit and getting out of the way. In-order-to avoid their assault, Anthony dropped his bags and ran. This is captured on video.

The officers got out of their car and ran after Anthony. Defendant Encarnacion exited the car first and immediately began chasing Anthony Alvarez. Their chase continued through a nearby alley. Officer Solano drew his pistol as he ran. Defendant Officer Solano ran past his partner and turned onto Eddy Street where he saw Anthony. Anthony lost his footing on the lawn of a home in 5200 block of West Eddy Street. Defendant Officer Solano immediately fired several shots at Anthony striking him in the back and leg. Anthony had not threatened the Defendant Officers or anyone else. As Anthony lay dying, he asked Defendant Solano, "Why did you shoot me?" Officer Solano replied, "Because you had a gun." Solano was referring to a handgun that Anthony had dropped. Anthony lay in a pool of his own blood for nearly ten minutes before the ambulance arrived. Anthony died from his injuries.

5

Defendant Solano, who chased Anthony down, pulled out his gun, and fired multiple shots at Anthony—striking him twice and killing him, has moved to partially dismiss Count I for excessive force. He wishes evade responsibility for how his unreasonable actions lead to Anthony's death.

According to the publicly released investigation file, Defendant Encarnacion told his supervisor Sgt. Haran, that he had fired his gun. When the magazine of Encarnacion's gun was inspected after the shooting, it had one bullet unaccounted for. Encarnacion also told Sgt. Tedeschi, that Defendant Solano began to fire *before* Anthony Alvarez turned towards him. The consequences of their approach were reasonably foreseeable. Both Officers are culpable for their reckless and violent violations of the U.S. Constitution.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S Ct. at 1949 (citing *Twombly*, 550 U.S. at 55). A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in his favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Under Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint is proper only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim on

6

which relief may be granted. *Hickey v. O'Bannon*, 287 F.3d 656, 657 (7th Cir., 2002). All well-pleaded facts, and any reasonable inferences drawn therefrom, are accepted as true and are construed in favor of the plaintiff. *Id*; *see also Stachon v. United Consumers Club*, 229 F.3d 673, 675 (7th Cir. 2000). To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

## ARGUMENT

**I.     Defendant Encarnacion had an Opportunity to Stop Defendant Solano's Excessive Force, but Failed to Intervene.**

From the time when Defendants made their decisions while still in their car, to when Defendant Solano drove straight at Anthony, until the bullets left the barrel of Solano's gun, Defendant Encarnacion had numerous opportunities to intervene but failed to do so.

> [A]nswering whether Defendant Encarnacion had an opportunity to intervene is a fact-intensive exercise. The facts can fill in the gaps, and discovery will shed light on the facts. The complaint may not offer a lot of details, but the details can come later. The complaint includes enough information to put Defendant Encarnacion on notice, which is all that the Federal Rules require. The motion to dismiss the failure-to-intervene claim (Count II) against Defendant Encarnacion is hereby denied.

Doc. No. 61. pp. 4-51.

The Court's earlier ruling is consistent with the Seventh Circuit. The Seventh Circuit "has implied that a realistic opportunity to intervene may exist whenever an officer could have called for a backup, called for help, or at least cautioned the excessive force defendant to stop." *Abdullahi v. City of Madison,* 423 F. 3d 763, 774 (7th Cir. 2005). From the moment Solano hit

7

the gas pedal to when the bullets left Solano's gun, Encarnacion did not say "slow down", did not say "let's get backup", and did not attempt to de-escalate. Encarnacion did not say "don't shoot," despite being with his partner throughout the event and was even close enough to see his partner aim and open fire before Anthony ever turned towards Solano.

Encarnacion also had a big missing bullet problem, and no explanation. Did he fire at Anthony earlier in the day? (Discovery indicates that Defendants were searching for Anthony earlier that day.) Perhaps Encarnacion thought that claiming he shot at Anthony was the easiest way to account for a bullet that he knew was missing. (Firearms are always checked after shooting incidents.)

By 2021 Encarnacion had a history of misconduct that would ultimately lead to a recommendation of firing: including serious substance abuse, violence, and misconduct with his service weapon Unfortunately, it is difficult to know what happened to Encarnacion's missing bullet. Encarnacion has not yet sat for his deposition.

The key fact of Plaintiff's failure to intervene claim, is not whether Encarnacion fired his gun. Defendants' use of the video does not negate any significant allegations in the Complaint. Plaintiff's Complaint does not allege that Encarnacion was caught on video firing his gun. However, Defendant Encarnacion telling his supervisors that he fired his weapon *is* significant for many other reasons. What is clear from the video, however, is that from the moment he pointed Anthony out until the moment Encarnacion saw Solano kill Anthony, the two acted in concert. Encarnacion was always in a position to intervene and did not even open his mouth to shout "stop." The final determination of whether Encarnacion failed to intervene will be fact and credibility intensive—exactly the purview of a jury. This examination has no place in resolving a motion regarding notice pleading.

Bystander liability for Encarnacion's involvement is the minimum that is appropriate. Per *Byrd v. Brishke,* 466 F.2d 6, 11 (7th Cir. 1972), "It is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." *Id.* Legal liability for excessive force then, would attach to Defendant Encarnacion if he failed to intervene.

"[A]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). From the time that Defendants first saw Anthony, Encarnacion did nothing but pour fuel on the fire. "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Lanigan v. Village of East Hazel Crest*, Ill., 110 F.3d 467, 478 (7th Cir.1997). A reasonable juror could conclude that Encarnacion should have cautioned Solano not to needlessly continue up the ladder of escalating unreasonable force at every point before the shooting. [2]

**II.     DEFENDANTS' SEIZED ANTHONY ALVAREZ**

---

[2] Plaintiff did not imply that there was no police body camera footage of this incident. There obviously is. What Defendants did, contrary to their training and CPD policy, was delay activating their body cameras. When a body camera is activated, it preserves video footage from two minutes before it was activated. Apparently, the cameras are always recording video, and if activated, the previous two minutes are preserved. Audio is not preserved in the buffer; a recording of what the officers said during those two minutes is not saved. Plaintiff cannot say whether this was intentional or not.

Defendants seized Anthony Alvarez. Even if they had not, a jury could still find them liable for excessive force. Per the Seventh Circuit Pattern Jury Instructions, to establish liability for excessive force, a Plaintiff must prove that "1. Defendants used unreasonable force against the Plaintiff. 2. The Defendant acted under color of law." 7th Cir. Pattern Jury Instruction 7.08.

An excessive force claim does not require a *completed* seizure. Defendants position would lead to disturbing results. For example, during an attempted arrest, an officer might have no basis for shooting a suspect—but fire their weapon anyway. Under Defendants' argument, if that person was hit, but then escaped, the officer could not face liability for excessive force. Fortunately, the Supreme Court does not agree with the Defendants. To satisfy the Fourth Amendment seizure requirement, force must be used "with the *intent* to restrain" *Torres v. Madrid*, 141 S. Ct. 989, 998 (2021). The standard is not whether restraint was effectuated. Even if Anthony had successfully fled, the analysis in *Torres* makes it clear that whether an intended seizure is completed is not a conclusive factor in an excessive force claim. However, Defendants' focus on seizure is merely academic. Anthony Alvarez did not escape. Defendants' escalating and unwarranted use of force created a fatal seizure. Each act of force used by Defendants is subject to a reasonableness analysis. What Defendants ask this Court to do, does not comply with common sense. The final blow in a beating is not the only compensable act. Gunshots that miss, cannot be considered non-force—if they were fired with the objective intent to subdue.

In their brief, Defendants rely on pre-*Torres* cases focused on the admissibility of recovered evidence for evaluating when a pursued individual would have the expectation of privacy in items dropped on the public way. By contrast, the holding in *Torres* explains how to evaluate force for the purpose of evaluating the force itself as opposed to whether contraband

10

dropped during a chase is admissible evidence. *Torres* established that the force is evaluated based on "objective intent." *Id. Torres* does not opine on whether non-touching acts can be amount to excessive force. *Torres* at 998. However, as explained below, the Seventh Circuit is quite clear in foreclosing Defendants' argument.

### III. Defendants Used Excessive Force when they Aimed and Drove their Vehicle at Anthony Alvarez.

A police vehicle is not a toy. In Illinois, a person commits assault when, "without lawful authority, he or she knowingly engages in conduct which places another in reasonable apprehension of receiving a battery." 720 ILCS 5/12-1. Garden variety assault is categorized as a Class C misdemeanor. *Id.* However, when an individual "without justification operates a motor vehicle in a manner which places a person… in reasonable apprehension of being struck by the moving motor vehicle," that person commits a Class 4 felony. 720 ILCS 5/12-2. Vehicular assault is the same class of felony as discharging a firearm in the commission of an assault. *Id.* A three-ton vehicle, barreling down on someone out of the blue is a terrifying and potentially deadly experience. Vehicular assault is a use of force even more threatening than merely pointing a gun at someone. By comparison pointing a gun at someone during the commission of an assault, per the Illinois Aggravated Assault statute is only a Class A misdemeanor. *Id.*

While *Torres* declined to evaluate whether specific non-touching force actions can amount to a Fourth Amendment seizure, the Seventh Circuit precedent on this subject is unambiguous. *Torres* at 998. Pointing a gun at someone has long been considered "force" in the Seventh Circuit. In *Baird v. Renbarger,* 576 F.3d 340, 343-345 (7th Cir. 2009), the Seventh Circuit held that pointing a sub-machine gun at a group of detainees could constitute unreasonable force. *Id.* at 343. The Seventh Circuit evaluated this non-touching use of force as an excessive force claim. *Id.* at 344. The Court wrote that under the circumstances, pointing a

sub-machine gun at detainees was "a heavy-handed use of force." *Id.* at 344-345. The Seventh Circuit continued,

> We have found similar uses of force unreasonable in other cases. For example, we held that gun pointing when an individual presents no danger is unreasonable and violates the Fourth Amendment. See *Jacobs v. City of Chicago*, 215 F.3d 758, 773-74 (7th Cir.2000) (pointing a gun at an elderly man's head for ten minutes even after realizing that he is not the desired suspect and when he presents no resistance is "out of proportion to any danger that Jacobs could possibly have posed to the officers or any other member of the community"); *McDonald v. Haskins*, 966 F.2d 292, 294-95 (7th Cir.1992) (pointing a gun at a nine-year-old child during a search and threatening to pull the trigger was "objectively unreasonable"). In a slightly different context, we observed that "police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir.1996).
>
> *Id.* at 345.

As examined above, aggravated assault by vehicle and by pointing a firearm are crimes covered by the same section of Illinois Code. These species of assault are clearly analogous. However, merely pointing a gun at an individual is a misdemeanor assault, while using a vehicle is a felony. Plaintiff has alleged that the officers did not see Anthony Alvarez breaking any law and that Anthony was not wanted for any violent or felony offense. Under these circumstances a jury would be remiss to find that it was acceptable for Defendants to commit an aggravated assault by vehicle. Both Defendants participated in this assault.

## IV. DEFENDANTS' MOTIONS TO DISMISS THE EXCESSIVE FORCE CLAIM SHOULD BE DENIED

Plaintiff has properly pled her excessive force against both Officer Defendants. An attack and seizure that begins with vehicular assault and ends with Plaintiff dying on the sidewalk is a poor target for Rule 12(b)(6) dismissal Officers cannot avoid a thorough reasonableness evaluation by only looking at the last seconds of the incident, while asking the trier of fact to examine all of Mr. Alverez's actions.

As stated above, the night prior to the shooting, the Defendants followed Anthony in their unmarked police vehicle without notifying dispatch or activating their body-worn cameras until late in the incident. Now, near midnight on March 31, 2021, Defendant Encarnacion said, "there's Alvarez" to his partner Defendant Solano. The Defendant Officers agreed to go after him. There were no warrants for Anthony's arrest, nor was there any investigative alert to notify officers to stop or speak to Anthony. Defendants cannot avoid submitting to discovery which will explain their pattern of extra judicial harassment of Anthony Alvarez, up to and including shooting him. Defendants should not be allowed to avoid an exploration of their motives, the exposure of their lies, and which are inseparable from the decision to pursue and shoot Anthony.

Seeing Anthony and then deciding to drive their police vehicle at him was both the first act of excessive force and the first domino leading to Anthony's death. All aspects of the excessive force claim against Defendants Solano, the driver and shooter, should stand. Encarnacion, Solano's partner, should be liable for those acts that he participated in.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's Motion to Strike should be granted and the Defendants' motion to dismiss should be denied, with the exception of the failure to Intervene Claim of Solano who actively participated in every alleged use of force.

Respectfully submitted,

/s/ Christopher Smith
One of Plaintiff's Attorneys

Christopher R. Smith
Christopher Smith Trial Group, LLC
53 W. Jackson, Suite 856
Chicago, IL 60604
312.432.0400