**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GISELLE HIGUERA, | ) | |
| | ) | 22 C 964 |
| Plaintiff, | ) | |
| | ) | Hon. Steven C. Seeger |
| v. | ) | |
| | ) | Magistrate Judge Jeannice Appenteng |
| CITY OF CHICAGO, et al. | ) | |
| | ) | JURY DEMAND |
| Defendants. | ) | |

**DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR MOTION TO BIFURCATE PLAINTIFF'S *MONELL* CLAIM AND STAY DISCOVERY ON THAT CLAIM**

Defendants, by their attorneys, for their Reply in Support of their Motion to Bifurcate Plaintiff's *Monell* Claim and Stay Discovery on that Claim (Dkt. 129) ("Motion"), state:

**INTRODUCTION**

This case is about Officer Evan Solano's split-second decision to use deadly force against the decedent, Anthony Alvarez ("Alvarez"). The totality of that use of force is caught on video, creating little to no questions of fact about what happened in the early morning hours of March 31, 2021. Giselle Higuera ("Plaintiff"), however, wishes to muddy the otherwise clear waters by exponentially expanding these events into a trial—not about what happened on March 31, 2021—but about scores of unrelated police involved shootings occurring decades earlier and the City's policies (or alleged lack thereof). In doing so, Plaintiff impermissibly conflates City policies with constitutional rights and fundamentally misconstrues the law surrounding her underlying claim of excessive force and its relationship to her *Monell* claim.

Rather than address Defendants' arguments and established law in Defendants' motion, Plaintiff's response raises abstract, theoretical arguments and speculative questions that have no place in this straightforward case, and posits that Defendants' Motion should be denied because

(i) there is a possibility she may prevail on her *Monell* claim even if she does not prevail on her underlying Constitutional claim against Officer Solano for excessive force; (ii) her underlying *Monell* claim is essential to "explain the institutional forces that caused Defendants' actions"; and (iii) bifurcation will result in two separate trials. (Pltf. Resp., *generally*). But Plaintiff's position has been rejected multiple times in similar cases and her arguments are flawed for several reasons. First, as explained in Defendants' Motion, Plaintiff's *Monell* claim as a matter of law is entirely contingent on her claim for excessive force, and therefore, bifurcation is appropriate. Second, Plaintiff's argument that the City's foot pursuit policy is essential to prove or explain Officer Solano's use of force, and that Officer Solano's assertion of qualified immunity necessitates the litigation of her *Monell* claim, is misguided. Third, Plaintiff misleadingly downplays the expansiveness of her remaining *Monell* claim which would require burdensome discovery and greatly expand the time and expense of trial. And finally, Plaintiff overlooks the substantial prejudice Defendants would suffer without bifurcation.

## ARGUMENT

### I. PLAINTIFF'S *MONELL* CLAIM RISES OR FALLS WITH HER EXCESSIVE FORCE CLAIM AGAINST SOLANO

Plaintiff makes many conclusory and fanciful arguments that there is a possibility she could be successful on her *Monell* claim even if she cannot prove her excessive force claim against Officer Solano. (*See* Pltf. Resp. at 6-9). In support of this argument, she claims that there is a possibility that jurors may find that Officer Solano was "merely negligent" or that even if Officer Solano did not have the "required mental state" for a finding of excessive force, a jury may find Officer Solano's actions were "caused by the City's deliberate indifference" because the officers were "trying to adhere to the City's foot pursuit 'training bulletin." (*Id*. at 6-7). But neither of these farfetched theories has merit given the facts of this case or the applicable law.

First, as to Plaintiff's arguments concerning negligence, there simply is no scenario where a jury could find Officer Solano was "negligent." There is no dispute that Officer Solano *intentionally* (not negligently or accidentally) shot Alvarez in the early morning hours of March 31, 2021.[1] But even if it is somehow believed that Solano was negligent, negligence does not violate the Constitution, and hence a negligent act cannot be the underlying basis for a *Monell* claim. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Daniels v. Williams*, 474 U.S.327, 329-330 (1986) (rejecting contention that the Due Process Clause and Fourteenth Amendment embrace tort law concept of negligence). And in any event Officer Solano and the City are completely immune from claims of negligence. 745 ILCS 10/2-202; 745 ILCS 10/2-109.

Furthermore, in direct contradiction to Plaintiff's arguments, there is no "required mental state" in evaluating whether a use of force was reasonable under the Fourth Amendment — it is an *objective* standard. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (an objective reasonableness standard governs Fourth Amendment excessive force claims). Thus, unlike *Thomas*, there is no scenario where a jury could find that Officer Solano did not have the "culpable state of mind" when using deadly force, yet Alvarez still suffered a constitutional harm, *see Thomas v. Cook County Sherrif Dep't*, 604 F.3d 293, 305 (7th Cir. 2010), and why *Monell* is often bifurcated in cases involving allegations of excessive force. *Horton v. City of Chicago*, 2016 WL 316878, *2 (N.D. Ill. Jan. 26, 2016) ("*Monell* claims are most often bifurcated in this district when a case is rooted in allegations of excessive force.") (quoting *Carr v. City of North Chicago*, 908 F.Supp.2d 926, 934 (N.D. Ill. Nov. 8, 2012)); *Ramsey v. Poulos*, 16 CV 10913, Dkt. 96 (N.D. Ill. Feb. 20, 2019) (bifurcating *Monell* in fatal shooting case).

---

[1] *See* Ex. 1, Solano Dep., at 30:11-20, 227:7-22, 228:1-5.

This very issue was addressed in *Carr v. City of North Chicago*. 908 F.Supp.2d 926, 930 (N.D. Ill. Nov. 8, 2012). In analyzing whether a verdict on plaintiff's *Monell* claim without a finding of liability against the officers would be inconsistent (the threshold question for determining if there is a basis for independent *Monell* liability) the *Carr* court distinguished excessive force claims from the deliberate indifference claim at issue in *Thomas*. *Id*.[2] The court noted that deliberate indifference is a ***subjective standard***, so a constitutional violation for failure to provide adequate medical care could occur without a guard individually violating the Constitution, considering the guard's state of mind may not rise to the level of deliberate indifference. Therefore, it was plausible for a jury to find that the County's policies and procedures caused the constitutional violation. *Id*. In contrast, the court noted that the standard for determining whether a use of force was reasonable is ***an objective standard*** that did not require a culpable mindset, and thus, there was no possibility for the scenario presented in *Thomas. Id*. The court concluded that, "if there was no excessive force, there was no injury to constitutional rights." *Id*.

Similarly here, Plaintiff's *Monell* claim is wholly dependent on the *only* constitutional violation alleged in Plaintiff's operative complaint,[3] that is, that Officer Solano's use of deadly force was excessive in violation of Alvarez's Fourth Amendment rights. (Dkt. 80, ⁋ 133, Dkt.

[2] In addition to *Thomas*, Plaintiff cites *Lewis* in support of her claim that she can be successful on her *Monell* claim without a finding against Officer Solano. However, *Lewis* does not support this contention, as the *Lewis* opinion addressed whether the City was entitled to summary judgment on *Monell*, an issue wholly inapposite to the bifurcation issues raised in this motion. *See Lewis v. City of Chicago*, No. 04-CV-3904, Dkt. 98 (N.D. Ill. Apr. 26, 2005).

[3] As noted in Defendants' Motion, Plaintiff also brings a claim for failure to intervene against Officer Sammy Encarnacion. But that claim too, is dependent on Plaintiff's ability to prove her excessive force claim against Officer Solano. And Plaintiff's state law claims (and Defendants' assertion of various state law defenses) are not at issue here, because for Plaintiff's *Monell* claim to proceed, she needs to demonstrate a constitutional violation.

129-2, at 11:3-12:1, 17:23-19:11); *see also Lyons v. City of Chicago*, 2023 WL 2390364, *3 (N.D. Ill. Mar. 7, 2023) (noting *Thomas* is a narrow exception when *Monell* claims are factually distinct from a plaintiff's underlying constitutional claims). Plaintiff's *Monell* claim pursues the theory that the City's lack of a foot pursuit policy led to a widespread practice of unnecessary and excessive uses of force. (Pltf. Compl., Dkt 80, ⁋⁋ 86-98). In support of this theory, she avers that the City has a "pattern or practice of excessive force," including "problematic shootings," where officers shoot at "fleeing suspects while unarmed and not posing a threat." (*Id*. at ⁋⁋ 89-92). The only "harm" that could thus be caused by the City's lack of a foot pursuit policy, as pleaded by Plaintiff herself, is a resulting excessive use of force.[4] (*Id*. at ⁋ 106). And the only way this "harm" could manifest itself is through the actions of Officer Solano, the only officer who used force against Alvarez. *See Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1080 (N.D. Ill. June 1, 2018) (citations omitted) (finding that any harm to the plaintiff could only be manifested through the actions of the officers). Put simply, just as in *Carr*, if there is no excessive force, then there is no constitutional injury, and without a constitutional injury, the City cannot be held liable. *See Carr*, 908 F.Supp.2d at 930. Therefore, *Thomas* is inapplicable here, and Plaintiff's *Monell* claim is entirely dependent on her excessive force claim.

Consequently, there is no risk of two separate trials, contrary to Plaintiff's assertions. (*See* Pltf. Resp. at 13). As detailed in Defendants' Motion, if Plaintiff fails to prove her excessive force claim, there is no chance for a *Monell* trial. *See Heller*, 475 U.S. at 799. If the Defendant Officers are found liable to Plaintiff, then there is no economic interest to proceed against the City, *see Swanigan v. City of Chicago*, 881 F.3d 577, 582 (7th Cir. 2018) (Section 1983 plaintiffs

---

[4] Plaintiff's entire motion heavily relies on arguments surrounding the foot pursuit bulletin. But the foot pursuit itself is not at issue in this case because it is not a constitutional harm—a finding this Court has already made twice. (*See* Dkt. 61, at 2-4; Dkt. 129-2, at 11:3-12:1, 17:23-19:11).

cannot recover twice for the same injury), given the City's proposed Limited Consent to Entry of Judgment. While Plaintiff decries that the City's Limited Consent is "missing teeth," many courts in this District have held it sufficient in protecting a plaintiff's interests and promoting judicial economy. *See Elrod v. City of Chicago*, 2007 WL 3241352, *8 (N.D. Ill. Nov. 1, 2007); *Haligas v. City of Chicago*, 671 F. Supp.3d 894, 896 (N.D. Ill. May 3, 2023); *Horton*, 2016 WL 316878, *2; *Treadwell v. City of Chicago*, 2022 WL 267988, * 6 (N.D. Ill. Jan. 28, 2022); *Williams v. City of Chicago*, 315 F. Supp.3d 1060, 1083-84 (N.D. Ill. Jan. 26, 2016). This is especially so where officers raise the defense of qualified immunity. (Dkt. 129-3, ⁋ 5); *Horton*, 2016 WL 316878, *2; *Williams*, 315 F.Supp.3d at 1083-84.

As a result, the liability issues in this case favor bifurcation. *See Carr*, 908 F.Supp.2d at 930; *see also Horton*, 2016 WL 316878, *2; *Ramsey*, 16 CV 10913, Dkt. 96.[5]

## II. PLAINTIFF'S *MONELL* CLAIM IS NOT NECESSARY TO EXPLAIN OFFICER SOLANO'S USE OF FORCE

Throughout her Response, Plaintiff argues that she will be prejudiced if she is not permitted to explain "the institutional forces that caused Defendants' actions," because those "moral forces" are imperative to understand "why Defendants killed Anthony Alvarez." (Pltf. Resp. at 6, 8, 9, 12, 14).

Setting aside that City policies and procedures regarding foot pursuits play little to no role in determining whether a split-second use of force was objectively reasonable, *infra* at 7, Defendants' Motion in no way seeks to bar, or otherwise asks this Court to rule on the admissibility of, evidence of the Defendant Officers' training, or the City's policy and

[5] Plaintiff claims that the cases cited by Defendants in their Motion do not support their position. (Pltf. Resp. at 9-10.) At no point, however, does Plaintiff explain that the cases cited by Defendants do not support their theory or stand for the propositions asserted in Defendants' Motion.

procedures in place at the time of the shooting, that may be relevant to Plaintiff's underlying constitutional claims.[6] Therefore, Plaintiff's arguments that if her *Monell* claim is bifurcated, this evidence will not be available at trial to assist in explaining the Defendant Officers' actions to a jury are simply unfounded and should be disregarded.

But even so, Plaintiff's *Monell* claim is not confined to the Defendant Officers' training, or the City of Chicago's relevant policies and procedures at the time of the shooting. Rather, as addressed below, *infra* at 8-11, Plaintiff's *Monell* claim encompasses years of unrelated foot pursuits and uses of force, as well as the development of the City's policies and procedures surrounding foot pursuits and uses of force. (Dkt. 80 at ¶¶ 84-104). *None* of this evidence is remotely relevant to the analysis of Officer Solano's use of force under the totality of the circumstances as he faced them on March 31, 2021, nor is it remotely relevant to any affirmative defense asserted by the Defendant Officers. *See Sherrod v. Berry*, 856 F.2d 802 (7th Cir. 1988) (reasonableness of use of force is judged based on the "totality of the circumstances known to the police officer at the time of the incident.").

Rather, the only plausible explanation for wanting this evidence at trial is to obscure the basic facts of this case. There is a real probability that after hearing evidence of unrelated alleged uses of excessive force, a jury would hold Officers Solano and Encarnacion accountable simply by association, rather than judging the facts of this case on its own merits. *See Lyons*, 2023 WL 2390364, *3 (finding that introduction of unrelated conduct presented real possibility jurors would hold officers accountable by association, and thus, justified bifurcation of *Monell*). This is precisely the prejudice to Defendant Officers that can be avoided with bifurcation. (Motion at

[6] Despite *Monell* discovery being stayed, the City has produced documents relevant to Officer Solano and Encarnacion's training and the City's policies on foot pursuits and use of force in place at the time of the March 31, 2021, shooting because the City recognizes that those materials may be relevant to Solano's or Encarnacion's actions.

12-15).

## III. PLAINTIFF'S EXPANSIVE *MONELL* CLAIM WILL DELAY DISCOVERY AND ADD TIME AND COSTS TO TRIAL

As to discovery, Plaintiff next argues that the Defendants' reliance on Plaintiff's previously issued discovery requests is "misleading" as "general police misconduct, general police oversight, and general consent decree compliance," are "no longer at issue." (Pltf. Resp. at 13-14).

While Defendants acknowledge this Court's ruling on Defendant City's Motion to Dismiss that narrowed Plaintiff's *Monell* claim, Plaintiff has not withdrawn her previously issued *Monell* discovery requests or issued new narrowly tailored requests she implies are appropriate. And she fails to address her burdensome discovery requests that *are* relevant to her remaining *Monell* claim — that is, those requests related to foot pursuits and shootings from 2016 to the present, deadly force case settlements since 2019, and Consent Decree documentation regarding deadly force incidents since 2020. (Motion at 8-9).

Completely ignoring these relevant *Monell* discovery requests, Plaintiff also downplays the breadth of her *Monell* claim that remains. But Plaintiff cannot run from the allegations made in her own Complaint. In support of her remaining *Monell* claim Plaintiff points to foot pursuits and shooting incidents dating back to 2010 —over a decade ago — to show that the City had a widespread practice of "excessive force, needless death and injury," particularly following foot pursuits. (Dkt. 80, ⁋⁋ 85-89). She further avers that the City has a "pattern or practice of excessive force," including "problematic shootings," where officers shoot at "fleeing suspects while unarmed and not posing a threat." (*Id*. at ⁋⁋ 89-92). Ultimately, Plaintiff asserts that because the City failed to implement a foot pursuit policy, it permitted unconstitutional uses of force to continue to occur during such pursuits, including the shooting of Alvarez. (*Id*. at ⁋ 106).

Discovery into this claim is no small undertaking. To show any sort of widespread pattern or practice, Plaintiff must delve into unrelated foot pursuits and resulting use of force incidents. This Court has already held that "to avoid turning Monell into *respondeat superior* liability, it is important to 'distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices.'" (Dkt. 129-2, at 37:19-25) (quoting *Howell v. Wexford Health Sources*, 987 F.3d 647, 654 (7th Cir. 2021)). This means that "[a] practice must infect a critical mass of an institutional body. The practice must be a pandemic." (Dkt. 129-2, at 42:20-23). In addition to the examples Plaintiff sets forth in her complaint regarding foot pursuits and uses of force, Plaintiff acknowledges that more discovery is needed to uncover additional alleged incidents where foot pursuits led to unjustified uses of force. (Dkt. 80, ⁋ 98) ("Plaintiff expects that *Monell* discovery will uncover many more such incidents.") The scope of this remaining claim and resulting discovery alone is likely to lead to numerous discovery disputes, which will only exponentially delay discovery.[7] And expert discovery into Plaintiff's *Monell* claim will itself be burdensome. *See Haligas*, 671 F. Supp.3d at 896 (finding expert discovery is particularly burdensome in *Monell* cases) (citing *Bradford v. City of Chicago,* 2019 WL 5208852, *2 (N.D. Ill. Oct. 16, 2016); *Saunders v. City of Chicago*, 146 F.Supp.3d 957, 968 (N.D. Ill. Nov. 17, 2015)).

Except for the completion of written deposition questions to witnesses Sergeant Mersch, and BIA investigators Lamberg and Fiedler that were the subject of Judge Appenteng's recent court order (Dkt. 128), the parties have completed fact discovery on the underlying shooting and will be moving into expert discovery. (Dkt. 125, ⁋ 1). Completing *Monell* discovery at this late

[7] The parties have already had to brief numerous discovery disputes regarding Plaintiff's underlying excessive force claim alone. (*See* Dkts. 97, 107, 109, 114.)

stage in the litigation on Plaintiff's theory of a widespread practice of foot pursuits and resulting uses of force will severely delay this case. Among the cases cited by Plaintiff where the City's motions to bifurcate and stay were denied, many denied bifurcation and/or stays of *Monell* discovery on prematurity based on the *early* stage of the litigation, most often without prejudice to refile after the close of discovery. *See Hudson v. City of Chicago*, 2017 WL 1425594, *5 (N.D. Ill. Apr. 20, 2017) (denying motion to bifurcate as premature without prejudice to refiling after the close of discovery);[8] *Bailey v. City of Chicago*, 19 CV 5381, Dkt. 87 (N.D. Ill. Mar. 12, 2020) (denying motion to bifurcate "without prejudice to any subsequent motion to bifurcate trial."); *Trexler v. Belvidere*, 20 CV 50113, Dkt. 55 (N.D. Ill. Feb. 10, 2021) (denial of bifurcation without prejudice to a renewed motion to bifurcate for trial after completion of discovery). But here the parties are nearing the end of at the litigation where it is appropriate to bifurcate and stay *Monell*.[9]

Additionally, a trial of Plaintiff's *Monell* claim can exponentially expand its length. Rather than focus on the use of force that occurred over a matter of seconds, the parties will be forced to try a large number of unrelated use of force incidents spanning over a decade. This will include testimony from competing (potentially multiple) *Monell* experts and potential City 30(b)(6) witnesses, and the introduction of copious records relating to the City's policies and

---

[8] Plaintiff also cites *Loury v. City of Chicago*, 16 CV 4452 (N.D. Ill. Mar. 27, 2020). However, *Loury* and *Hudson* are the same case, Tambrasha Hudson was the administrator of the estate of Pierre Loury. *See Hudson*, 2017 WL 1425594; *Loury*, 16 CV 4452.

[9] Plaintiff also cites to a number of reversed conviction cases that span over a period of over twenty years. *Rodriguez v. City of Chicago*, 429 F.Supp.3d 537 (N.D. Ill. Dec. 17, 2019) (reversed conviction); *Bailey v. City of Chicago*, 19 CV 197, Dkt. 87 (N.D. Ill. Jan. 10, 2019) (reversed conviction); *Bouto v. Guevara*, 19 CV 2441 (N.D. Ill. Feb. 11, 2020) (reversed conviction); *Maysonet v. Guevara*, 18 CV 2342 (reversed conviction); *Batchelor v. City of Chicago*, 18 CV 8513 (N.D. Ill. Mar. 4, 2021) (reversed conviction). These cases are also starkly distinguishable from a case alleging excessive force, where the incident in question happened over a matter of seconds, not years. Rather, as noted in text, "*Monell* claims are most often bifurcated in this district when a case is rooted in allegations of excessive force." *Horton*, 2016 WL 316878, *2 (citing *Carr*, 908 F.Supp.2d at 934).

procedures on foot pursuits and uses of force. Thus, as argued in Defendants' Motion, granting bifurcation promotes judicial economy by preventing "judicial intervention in discovery disputes arising from [*Monell*] claims; ruling on the City's summary judgment motion; and if the City's motion for summary judgment is denied, presiding over a trial that will be lengthier, and legal and factually more complex, if all of Plaintiff's claims are presented simultaneously to a jury." *Medina v. City of Chicago*, 100 F.Supp.2d 893, 895 (N.D. Ill. June 16, 2000).

## IV. PREJUDICE TO DEFENDANTS NECESSITATES BIFURCATION

Finally, Plaintiff dismisses Defendants' argument of prejudice without in any way addressing its merits. (Pltf. Resp., at 14). But the potential prejudice both to the City and the Defendant Officers is real, and courts in this District have held that prejudice alone is sufficient to bifurcate *Monell*. *Lyons*, 2023 WL 2390364, *3 (avoidance of prejudice alone justifies bifurcation).

Ultimately, only one question is truly at issue in this case—whether Officer Solano's split-second use of force was reasonable. However, if Plaintiff's *Monell* claim is in play, this opens the floodgates to a potentially massive amount of evidence concerning unrelated allegations of unjustified uses of force. (Def. Mtn. at 12-13). Courts in this District have acknowledged the clear danger that this evidence will "contaminate the mind of the finder of fact in its consideration of the liability of the other defendant[s]." *Carr*, 908 F.Supp.2d at 934; *Lyons*, 2023 WL 2390364, *3 (accord); *Ackerman v. Allen*, 2017 WL 1536447, *5 (N.D. Ill. Apr. 27, 2017) ("Evidence of other non-party officers using excessive force could lead the jury to infer that the Defendant Officers committed similar acts, even if the evidence presented at trial did not support such a finding.").

And the prejudice to the City is just as problematic if *Monell* remains in play at trial. Plaintiff's own response to Defendants' Motion at times appears to confuse the issue of *Monell* liability with that of *respondeat superior* or vicarious liability. The same issue is likely to arise at trial with jurors, who may have a harder time understanding the complexity of *Monell* liability. *See Bradford v. City of Chicago*, 2019 WL 5208852, *4 (N.D. Ill. Oct. 16, 2019). As a result, this factor too, favors the granting of Defendants' Motion.

## CONCLUSION

Accordingly, for the reasons explained above and in its motion, Defendants ask this Court to bifurcate Plaintiff's *Monell* claim for purposes of trial, stay *Monell* discovery, and defer the City's Answer to Plaintiff's operative Complaint, as well as for any further relief this Court deems just.

Date: May 13, 2024

Respectfully submitted

/s/ Brian P. Gainer
BRIAN P. GAINER, Atty No. 6286200
*One of the Attorneys for Evan Solano and Sammy Encarnacion*

/s/ Allison L. Romelfanger
ALLISON L. ROMELFANGER, Atty No. 630033
*One of the Attorneys for City of Chicago*

Brian P. Gainer
Lisa M. McElroy
Johnson & Bell, Ltd
33 West Monroe Street, Suite 2700
Chicago, IL 60603
(312)372-0770
gainerb@jbltd.com

James G. Sotos
David A. Brueggen
George J. Yamin, Jr.
Allison L. Romelfanger
**THE SOTOS LAW FIRM, P.C.**
141 W. Jackson Blvd, Suite 1240A
(630)735-3300
aromelfanger@jsotoslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that on May 13, 2024, I electronically filed the foregoing **DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR MOTION TO BIFURCATE PLAINTIFF'S *MONELL* CLAIM AND STAY DISCOVERY ON THAT CLAIM** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed below.

***Attorneys for Plaintiff***

Steve H. Fine
Law Office of Steven H. Fine
53 West Jackson Blvd., Suite 1215
Chicago, IL 60604
(312)922-0855
steve@sfinelaw.com

Christopher R. Smith
Christopher Smith Trial Group, LLC
53 W. Jackson, Suite 856
Chicago, IL 60604
(312)432-0400
chris@crstrialgroup.com

Tania M. Dimitrova
Law Offices of Tania Dimitrova, LLC
8 S. Michigan Ave, Suite 1300
Chicago, IL 60603
(312)489-9529
tania@dimitrovalaw.com

James Baranyk
james@secondcitylaw.com

***Attorneys for Defendants Evan Solano and Sammy Encarnacion***

Brian P. Gainer
Lisa M. McElroy
Johnson & Bell, LTD
33 West Monroe Street, Suite 2700
Chicago, IL 60603
(312)372-0770
gainerb@jbltd.com
mcelroyl@jbltd.com

/s/ Allison L. Romelfanger
ALLISON L. ROMELFANGER
*One of the Attorneys for Defendant City of Chicago*