**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GISELLE HIGUERA, Administrator for the Estate of Anthony Alvarez and as mother of A.A., a minor, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 22-cv-964 |
| v. | ) ) | Hon. Steven C. Seeger |
| CITY OF CHICAGO, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Two officers from the Chicago Police Department, Evan Solano and Sammy Encarnacion, got in a foot chase with Anthony Alvarez late one night.  They sprinted through the neighborhood, darting down a dark alley and scampering down the block.  As Officer Solano turned the corner, he saw Alvarez running in the front yard of a house.  Officer Solano made the split-second decision to fire his weapon.

Five shots rang out, and several bullets struck Alvarez.  He slumped to the ground, and later passed away.  Before long, the officers spotted a gun on the ground next to Alvarez.

His mother, Giselle Higuera, responded by filing suit against both officers and the City of Chicago, alleging excessive force and other claims.

Defendants moved to dismiss, and this Court trimmed the case on the margins.  This Court ruled that the chase itself was not a seizure.  The excessive force claim against the second officer (Encarnacion) did not pass muster because he never seized Alvarez.  But the core of the case remained intact.

Higuera later amended the complaint, and another round of motions to dismiss followed. Once again, this Court pruned the case. The excessive force claim against Officer Solano survived, and so did the failure-to-intervene claim against Officer Encarnacion. This Court granted in part, and denied in part, the motion to dismiss the *Monell* claim.

Higuera has now returned with a motion for reconsideration. She asks this Court to reconsider its rulings in light of the Supreme Court's recent decision in *Barnes v. Felix*, 605 U.S. 73 (2025). That case doesn't require a different outcome.

For the reasons stated below, the motion for reconsideration is denied.

## Background

This Court assumes that any interested reader knows the backstory. So this Court will simply cover the highlights. The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

The story begins when Officers Solano and Encarnacion drove around the streets of Chicago in their unmarked squad car, and spotted Alvarez.

According to the second amended complaint, there was no reason for Alvarez to be on their radar screen. Alvarez wasn't breaking the law. There were no warrants for his arrest, and no investigative alerts, either. Alvarez was simply carrying grocery bags and a Styrofoam cup.

For whatever reason, the officers decided to follow Alvarez. *See* Second Am. Cplt., at ¶¶ 8–13 (Dckt. No. 80). Before long, things went sideways, and spiraled downward.

The officers drove their squad car at Alvarez "at a high speed," and Alvarez ran away. *Id.* at ¶¶ 18–19. At some point, the officers turned on their body worn cameras. The footage

captured the officers driving for about a minute and a half. The cameras captured what happened next, too.

The officers got out of the squad car, and a foot chase ensued. The officers chased Alvarez across a back yard, through an alley, and down a side street.

Officer Solano turned the corner, and spotted Alvarez in the front yard of a home. Solano yelled out: "Hey! Drop the gun! Drop the gun!" *See* Solano BWC, at 2:10-16 (Dckt. No. 162).

Within seconds, Officer Solano fired five shots at Alvarez, striking him several times. Alvarez slumped to the ground.

Officer Encarnacion lagged behind, and caught up a few seconds later. When he turned the corner with his gun drawn, Alvarez was already down. *See* Encarnacion BWC, at 1:50-56 (Dckt. No. 162).

As he groaned on the pavement in distress, Alvarez asked the officer why he shot him. Officer Solano responded: "You had a gun!" *See* Solano BWC, at 2:20-25 (Dckt. No. 162).

The video shows a gun laying on the pavement near Alvarez. One officer pointed to the weapon, saying: "The gun is right there. The gun is right there." *Id.* at 3:05-10.

A security camera in front of the home caught the shooting. It shows Alvarez turning the corner from the side street, stumbling, getting up a little, stumbling again, and then getting up and scampering away. He had his phone in his left hand, and by the look of things, he had something in his right hand, too. *See* Front Door Camera, at 4:52 to 6:00 (Dckt. No. 162). The camera captured the shooting, and the tragedy that followed.

The mother of Alvarez, Giselle Higuera, filed suit on behalf of the estate, bringing nine claims. Defendants moved to dismiss the excessive force claim (in part) and the failure-to-intervene claim.

3

This Court granted the motion to dismiss in part. This Court ruled that the chase itself cannot support a Fourth Amendment claim, because a chase is not a seizure. A seizure requires physical contact, or submission to a lawful command to stop. *See Hawkins v. Mitchell*, 756 F.3d 983, 992–93 (7th Cir. 2014). An attempt to seize someone – without physical contact – is not a seizure.

As the Supreme Court has explained, "[t]he word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful. ('She seized the purse-snatcher, but he broke out of her grasp.') It does not remotely apply, however, to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. That is no seizure." *See California v. Hodari D.*, 499 U.S. 621, 626 (1991).

That is, "[a]n arrest requires *either* physical force (as described above) *or,* where that is absent, *submission* to the assertion of authority." *Id.* (emphasis in original). A "show of authority" that does not produce a stop is not a seizure. *Id.* at 628–29; *see also id.* at 626 ("The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not.").

The excessive force claim against Officer Solano (the shooter) survived the motion to dismiss. So did the failure-to-intervene claim against Officer Encarnacion.

Higuera later filed an amended complaint, and a second amended complaint. The second amended complaint included excessive force and failure-to-intervene claims, as well as a *Monell* claim against the City. The *Monell* claim alleged that the City lacked a foot chase policy, and that the City failed to discipline its officers.

4

Another round of motions to dismiss followed. As before, this Court dismissed any claim against the officers based on the foot chase itself. But the shooting was another story. This Court allowed an excessive force claim against Officer Solano, and a failure-to-intervene claim against Officer Encarnacion.

Along the way, this Court expressed its doubts about whether the failure-to-intervene claim could survive summary judgment. Based on the footage, the failure-to-intervene claim looked like a steep climb, but a motion to dismiss was not the time for the climb.

This Court also granted in part, and denied in part, the motion to dismiss the *Monell* claim. The complaint passed muster when it came to the lack of a foot chase policy.

But the Court dismissed the *Monell* claim about the City's failure to discipline officers. The complaint didn't offer much, except a citation to the DOJ report from 2017.

The parties embarked on discovery. Along the way, this Court granted a motion to bifurcate discovery. *See* 6/26/24 Order (Dckt. No. 139).

Defendants later filed a motion for summary judgment. This Court will address that motion separately.

In the meantime, the Supreme Court issued its decision in *Barnes v. Felix*, 605 U.S. 73 (2025). That ruling prompted the estate to file a motion for reconsideration.

## Legal Standard

A district court can revisit its orders before the entry of final judgment. Interlocutory orders "may be revised at any time before the entry of judgment adjudicating all the claims." *See* Fed. R. Civ. P. 54(b); *see also Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012). But a district court needs a reason – a *good* reason – to do so.

"A motion to reconsider an interlocutory order, however, serves a limited purpose, and it is not a vehicle to merely rehash an argument the court has already rejected or to present legal arguments that were not presented earlier." *See Brodsky v. HumanaDental Ins. Co.*, 2016 WL 9212001, at *1 (N.D. Ill. 2016); *see also Wilkins v. Just Energy Grp. Inc.*, 2019 WL 1317756, at *2 (N.D. Ill. 2019); *Schilke v. Wachovia Mortg.*, FSB, 758 F. Supp. 2d 549, 554 (N.D. Ill. 2010).

"A motion for reconsideration cannot be used to introduce new legal theories for the first time, to raise legal arguments that could have been heard during the pendency of the previous motion, or to present evidence that could have been adduced during the pendency of the original motion." *Belbis v. County of Cook*, 2003 WL 187407, at *1 (N.D. Ill. 2003); *see also Publishers Res., Inc. v. Walker–Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985).

Legitimate grounds for a motion for reconsideration include a "significant change in the law or facts since the parties presented the issue to the court." *See United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008). Other permissible grounds include the court's misunderstanding of "a party's arguments, or a party's contention that the court ruled on an issue that was not properly before it." *Id.*; *see also Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911–12 (N.D. Ill. 2015) (explaining that motions to reconsider "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence"). The Seventh Circuit has cautioned that the need for reconsideration "rarely arise[s] and the motion to reconsider should be equally rare." *See Bank of Waunakee*, 906 F.2d at 1191.

A district court's opinions are "not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Geraty v. Village of Antioch*, 2015 WL 127917, at *3

(N.D. Ill. 2015) (quoting *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988)).

A party seeking reconsideration "bears a heavy burden." *See Patrick*, 103 F. Supp. 3d at 912. Ultimately, the decision whether to grant a motion to reconsider "is a matter squarely within the Court's discretion." *See Darvosh v. Lewis*, 2015 WL 5445411, at *3 (N.D. Ill. 2015) (citing *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996)).

District courts do not have the bandwidth to hear, and then rehear, motions again and again. The resources of a district court are finite, and there is a very real cost to looking at the same issue a second time.

A court's time is zero sum, so any time spent on a motion for reconsideration is time that cannot be spent anywhere else. The cost of taking another look at the same issue is paid by every litigant in all of the other cases on a district court's docket. They have to wait while someone else gets back in line a second time.

Sometimes, taking another look at an issue makes perfect sense. District courts are in the business of getting things right, as best they can. But courts are not in the business of reconsidering their decisions unless a litigant comes forward with a good reason. And here, there is none.

## Analysis

### I.     The Excessive Force Claim against Officer Encarnacion

Higuera asks this Court to reconsider its rulings on the motions to dismiss based on the Supreme Court's later decision in *Barnes v. Felix*, 605 U.S. 73 (2025). This Court gave the issue another close look, and sees no reason to reach a different result.

7

The Supreme Court in *Barnes* addressed the time period that applies to an excessive force claim. The Supreme Court reaffirmed the longstanding "totality of the circumstances" approach.

*Barnes* involved an excessive force claim about a traffic stop. A police officer pulled over a driver, and during the stop, the driver started to drive away. The officer reacted by jumping onto the doorsill of the car, and then shot and killed the driver. *See Barnes*, 605 U.S. at 77.

The Fifth Circuit evaluated the reasonableness of the use of force by applying its "moment of threat" rule. Under that approach, when an officer is in danger, courts consider only the moment of the threat that led to the deadly force. Any events leading up to the shooting were not relevant.

The Supreme Court reversed, holding that the Fourth Amendment included no such time limit. *Id.* at 80. "To assess whether an officer acted reasonably in using force, a court must consider all the relevant circumstances, including facts and events leading up to the climactic moment." *Id.* at 76.

What's past is prologue. By the same token, earlier events can shed light on the reasonableness of later events. "[E]arlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones." *Id.* at 80. In sum, the "history of the interaction, as well as other past circumstances known to the officer, thus may inform the reasonableness of the use of force." *Id.* at 80–81.

*Barnes* rejected the Fifth Circuit's "moment of threat" rule, but did not change anything when it came to the Seventh Circuit. The Seventh Circuit has long employed the "totality of the circumstances" approach when evaluating an officer's reasonableness. *See, e.g., Davis v. Allen,* 112 F.4th 487, 493 (7th Cir. 2024) ("The Fourth Amendment's reasonableness requirement

8

applies when officers seize a person by physical force.  Whether a particular use of force is reasonable depends on the totality of the circumstances."); *Brumitt v. Smith*, 102 F.4th 444, 447 (7th Cir. 2024).

The Seventh Circuit has never adopted the "moment of threat" rule.  And this Court did not apply that rule when it ruled on the motions to dismiss, either.

Even so, Higuera believes that *Barnes* saves her claim against Officer Encarnacion, meaning the officer who did not pull the trigger.  Higuera broadly reads *Barnes* to mean that earlier events count.  And then, she turns that point into a principle that earlier events can give rise to a claim.  As Higuera sees things, the chase caused the later shooting, so the chase itself can give rise to a claim.

According to her, "[c]onsidering all the circumstances, Defendants' decision to drive their car at Mr. Alvarez must be considered a domino in a series of escalating acts that led to Mr. Alvarez' death."  *See* Mtn. for Reconsideration, at 4 (Dckt. No. 188); *see also id.* at 8 ("A proper view of the totality of the circumstances shows how Encarnacion was a but-for cause of the fatal excessive force. . . . The vehicular assault and chase must be considered as within the totality the circumstances of the force that caused Mr. Alvarez's death.").

Higuera overreads *Barnes*.  That case addressed the relevant time period when evaluating the reasonableness of a seizure.  That case did not address what counts as a seizure.  *Barnes* does not stand for the proposition that anything that took place before a seizure can give rise to a claim.

The problem with the claim against Officer Encarnacion wasn't the timing.  This Court didn't rule that Officer Encarnacion's actions could not give rise to a claim because they took place before the shooting.

9

Instead, this Court held that the excessive force claim against Officer Encarnacion failed because he never seized Alvarez. An excessive force claim falls under the Fourth Amendment, and the Fourth Amendment requires an unreasonable search or seizure. No seizure, no excessive force claim.

The complaint failed to state an excessive force claim against Officer Encarnacion because it did not allege a seizure. A chase is not a seizure, so a chase (standing alone) cannot give rise to an excessive force claim. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991). If anything, a chase is the opposite of a seizure – the whole reason for the chase is the fact that someone *isn't* seized yet.

The problem with Higuera's excessive force claim against Officer Encarnacion isn't the reasonableness of the seizure. The timing isn't the problem, either. The problem is that there was no seizure by Officer Encarnacion at all.

That is, the foot chase might have relevance when evaluating the reasonableness of the shooting, because the shooting was a seizure. But that doesn't mean that the foot chase itself can give rise to a claim, because the foot chase itself was not a seizure.

Higuera also argues that *Barnes* saves her *Monell* claim about a widespread practice of failing to discipline officers. *Barnes* doesn't lend a hand. *Barnes* addressed the applicable time period for an excessive force claim, and didn't address *Monell* at all.

## II.     Bifurcation

Next, Higuera uses the motion for reconsideration as an opening to revisit the ruling about the bifurcation of discovery. Higuera simply repeats arguments that this Court heard, considered, and rejected. A motion for reconsideration is not a way to rehash old arguments.

Higuera comes forward with nothing new. *Barnes* did not address *Monell*, let alone how to handle *Monell*-related discovery. Higuera repeats an old argument, so this Court will stick with its old ruling.

## Conclusion

For the foregoing reasons, Higuera's motion for reconsideration is denied.

Date: March 9, 2026

Steven C. Seeger
United States District Judge

11